**Wayne S. PONCE, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 28, 1996.
Decided Nov. 12, 1996.

Stephen Yakopec, Jr., Arnold, for appellant.

Timothy P. Wile, Assistant Counsel In-Charge, Harrisburg, and Harold H. Cramer, Assistant Chief Counsel, Harrisburg, for appellee.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Wayne S. Ponce (Ponce) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that dismissed his appeal from a one-year suspension of his operating privileges imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) for his failure to submit to chemical testing pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547 (Implied Consent Law). We affirm.

The facts of this case, as found by the trial court, are as follows:

On 1 October 1994, Officer Patrick Retort of the East Deer Township Police Department was called to the scene of a single vehicle accident where he discovered the operator of the vehicle, [Ponce]. [Ponce] exhibited a staggered gait, glassy eyes, and slurred speech and an alcoholic odor emanated from his person (H.T.2–3.)[1]

Field sobriety tests were performed and, in the opinion of the officer failed by [Ponce] (H.T.4.)

En scene, Officer Retort advised [Ponce] of the implied consent law and requested chemical testing. [Ponce] verbally refused this request (H.T.6.)

As a result, [DOT] suspended his motor vehicle operator's privileges for a one-year period by notice dated 21 October 1994, effective 25 November 1994.

At trial testimony concerning the accident was elicited from [Ponce] and Officer Retort. Both testified to the seriousness of the accident and the severity of the injuries sustained by [Ponce]. While medical personnel were summoned to the scene, [Ponce] rejected their assistance and did not, in point of fact, seek medical treatment until the following day (H.T.20). Our examination of the record including all admissible medical evidence demonstrated that while [Ponce] was injured there was no nexus between those injuries and his ability to comprehend the recital of the implied consent law and the request for testing. The officer's credible testimony showed that the arrest itself was well-founded upon typical indicia of intoxication and we believe that [Ponce] made a knowing and conscious refusal of the request.

Trial Court Opinion, pp. 1–2. Based on these findings, the trial court dismissed Ponce's appeal of the one-year suspension of his operating privileges.

On appeal to this court,[2] Ponce claims: (1) the trial court erred in dismissing his appeal because the suspension violates the Double Jeopardy Clause of the United States Constitution; and (2) the trial court erred in holding that Ponce made a knowing and conscious refusal to Officer Retort's request that he submit to chemical testing.

At the hearing *de novo* before the trial court, Ponce argued that the imposition of the suspension violated the Double Jeopardy Clause of the United States Constitution as he had previously been tried for, and acquit-

---

1. "H.T." refers to the notes of testimony from licensee's appeal *de novo* of DOT's license suspension conducted before the trial court on October 25, 1995.

2. In an appeal arising from the suspension of a licensee's operating privileges, our scope of review is limited to determining whether the trial

court's findings are supported by substantial evidence or whether the trial court erred as a matter of law or manifestly abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. Garlan*, 121 Pa.Cmwlth. 400, 550 A.2d 873 (1988), *petition for allowance of appeal denied*, 522 Pa. 614, 563 A.2d 499 (1989).

ted of, the offense of driving while under the influence of alcohol, 75 Pa.C.S. § 3731, which arose out of the same incident underlying his license suspension.[3]

Here, Ponce again claims that the one-year suspension of his operating privileges is precluded by the Double Jeopardy Clause of the United States Constitution[4] as it constitutes a second attempt by the Commonwealth to punish him for the offense of driving while under the influence of alcohol. However, the Double Jeopardy Clause does not preclude the imposition of a civil penalty for conduct for which a criminal conviction has already been obtained. *Sweeny v. State Board of Funeral Directors,* 666 A.2d 1137 (Pa.Cmwlth.1995). In addition, as a general rule, the Double Jeopardy Clause does not apply to civil proceedings, such as those before administrative agencies, which result in civil penalties. *Id.*

Here, Ponce's driving privileges were suspended pursuant to the Implied Consent Law which provides, in pertinent part:

### § 1547. Chemical testing to determine amount of alcohol or controlled substance

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) **Suspension for refusal.**—

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

As it has been previously noted, the mandatory suspension of a licensee's operating privileges following a conviction for driving under the influence of alcohol is a remedial sanction that is civil in nature. *Commonwealth v. Wolf,* 534 Pa. 283, 632 A.2d 864 (1993); *Zanotto v. Department of Transportation,* 83 Pa.Cmwlth. 69, 475 A.2d 1375 (1984). The suspension of a licensee's operating privileges under these circumstances serves not so much as punishment, but rather serves the remedial goal of protecting the public against the licensee's unsafe driving habits. *Wolf.* Because the suspension following a conviction for driving under the influence of alcohol serves this remedial goal, it does not constitute punishment for purposes of a double jeopardy analysis.

Ponce also argues that his physical injuries prevented him from making a knowing conscious refusal to submit to chemical testing. Where a licensee has filed a statutory appeal from a one-year suspension imposed by DOT in compliance with the mandate set forth in 75 Pa.C.S. § 1547(b)(1), as a consequence of a reported chemical test refusal, DOT bears the initial burden of proof that at the statutory appeal hearing. In order to satisfy that burden and establish a *prima facie* case, DOT must present evidence showing that: (1) the licensee was arrested for a violation of 75 Pa.C.S. § 3731;

---

**3.** For purposes of argument of the Double Jeopardy claim, the Commonwealth stipulated that Ponce had been found not guilty of driving while under the influence at criminal proceedings which preceded the civil hearing.

**4.** The Double Jeopardy Clause of the United States Constitution provides, in pertinent part, "[n]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S..Const. Amend. V.

(2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned of the consequences of. refusing the chemical test, i.e., the suspension of the licensee's operating privilege. *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994).

██ Once DOT has made out its *prima facie* case, as it did here, the burden then shifts to the licensee to establish that refusal was not knowing and conscious or that the licensee was physically incapable of successfully performing the requested chemical test. *Id.* The specific issue of whether a licensee's refusal of a chemical test was knowing and conscious is one of fact for determination by the trial court and must be supported by substantial evidence. *Department of Transportation, Bureau of Driver Licensing v. Grass,* 141 Pa.Cmwlth. 455, 595 A.2d 789 (1991). Here, Officer Retort testified that he did not notice that Ponce was injured other than a possible scrape on his arm. While Officer Retort summoned an ambulance to the accident scene, Ponce refused treatment and was not seen until the following day at Allegheny Valley Hospital. The hospital records indicated that Ponce experienced no loss of consciousness at the time of the accident as he "felt fine." (72a.)

Three days later Ponce saw Dr. Choudhry for injuries that required the wearing of a neck collar. Although Ponce argues that he had suffered a "broken neck," Dr. Choudhry stated that there was only a fracture of the spinus process of the fifth cervical vertebrae, C–5, requiring no treatment except the neck collar. Dr. Choudhry never testified that, in his opinion, Ponce was incapable of making a knowing and conscious refusal because he could not render such opinion because he did not see Ponce until days later. Because Ponce had the burden of proof after DOT made out its *prima facie* case, the trial court's finding that Ponce made a knowing and conscious refusal based on Officer Retort's testimony is supported by substantial evidence. Therefore, we hold that the trial court did not err in dismissing Ponce's appeal

1. 75 Pa.C.S. § 1547.

from the revocation of his operating privileges.

Accordingly, we affirm.

### ORDER

NOW, this 12th day of November, 1996, the order of the Court of Common Pleas of Allegheny County, is hereby affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent.

In this appeal, Ponce claims, *inter alia,* that the one-year suspension of his operating privileges imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) for his failure to submit to chemical testing pursuant to section 1547 of the Vehicle Code (Implied Consent Law)[1] is precluded by the Double Jeopardy Clause of the United States Constitution as it constitutes a second attempt by the Commonwealth to punish him for the offense of driving while under the influence of alcohol, 75 Pa.C.S. § 3731. Because I believe that Ponce is correct that the continued suspension of his driving privileges is prohibited by the Double Jeopardy Clause, I would reverse the order of the trial court affirming the suspension.

The Double Jeopardy Clause of the United States Constitution provides, in pertinent part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. As the United States Supreme Court has noted, "[w]e have explained that 'the Clause serves the function of preventing both successive punishment and successive prosecution,' ... and that 'the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it.'" *Witte v. United States,* —— U.S. ——, ——, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995) (citations omitted). The Court also noted that:

Significantly, the language of the Double Jeopardy Clause ·protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being *twice put in jeopardy* for such punishment.

See *Price v. Georgia,* 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970). That is, the Double Jeopardy Clause "prohibits merely punishing twice, or *attempting a second time to punish criminally,* for the same offense." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938) (emphasis added). *Id.*

However, as the majority correctly notes, the Double Jeopardy Clause does not preclude the imposition of a civil penalty for conduct for which a criminal conviction has already been obtained. *Sweeny v. State Board of Funeral Directors,* 666 A.2d 1137 (Pa.Cmwlth.1995). In addition, as a general rule, the Double Jeopardy Clause does not apply to civil proceedings, such as those before administrative agencies, which result in civil penalties. *Id.*

As this court noted in *Sweeny:*

> This distinction between civil and criminal penalties for purposes of double jeopardy has been expanded upon by the United States Supreme Court in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In *Halper,* the Supreme Court held that, in order to determine whether double jeopardy applies to administrative proceedings, one must look, not to the legislature's classification of the penalty as being civil or criminal, but instead, to the penalty imposed and the purposes that penalty may fairly said to serve. Id. If the civil sanction can be characterized only as a deterrent or as punishment for the conduct in question, then double jeopardy would prevent the imposition of that sanction. Id.

> The Supreme Court subsequently applied this analysis in *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), when it examined the constitutionality of Montana's tax on dangerous drugs which the state sought to impose after a conviction for the possession of drugs had been obtained and after the state had succeeded on its forfeiture proceedings. Citing to the facts that the tax is not imposed upon an individual unless he or she has been convicted of a specific crime, that the tax is assessed against property that the individual no longer possesses due to confiscation and destruction by the state, and that the amount of the tax was approximately eight times the value of the drugs, the Supreme Court concluded that the tax was fairly characterized as punishment. Id. In so doing, however, the Supreme Court recognized that a civil penalty, that is remedial in nature and is not punitive, does not violate an individual's protection from double jeopardy. Id.

*Sweeny,* 666 A.2d at 1139.

In the instant case, Ponce's driving privileges were suspended pursuant to the Implied Consent Law which provides, in pertinent part:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) **Suspension for refusal.**—

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating

privilege of the person for a period of 12 months.

\*   \*   \*   \*   \*   \*

**(c) Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

\*   \*   \*   \*   \*   \*

**(e) Refusal admissible in evidence.**— In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

The object of the Implied Consent Law is to reduce the number of motorists driving while under the influence of alcohol, as the Commonwealth has a compelling interest in protecting its citizens from the dangers imposed by intoxicated drivers. *Occhibone v. Department of Transportation, Bureau of Driver Licensing,* 542 Pa. 588, 669 A.2d 326 (1995). It remains one of the Commonwealth's most effective tools against drunk driving, and provides an effective means of quickly denying intoxicated motorists the use of its highways. *Id.* It also helps facilitate the acquisition of chemical analyses and permits this information to be used in legal proceedings. *Id.* Thus, the purpose and remedial objective of the Implied Consent Law is to provide the police with evidence to prosecute an intoxicated driver, thereby keeping him off Commonwealth roadways. *Department of Transportation v. McFarren,*

514 Pa. 411, 525 A.2d 1185 (1987). *See also Kostyk v. Department of Transportation,* 131 Pa.Cmwlth. 455, 570 A.2d 644 (1990) (Objective of the Implied Consent Law is to protect the public by providing an effective means of denying intoxicated motorists the privilege of using the Commonwealth's highways and is a proper exercise of the Commonwealth's police power by the General Assembly); *Sheakley v. Department of Transportation,* 99 Pa. Cmwlth. 328, 513 A.2d 551 (1986), *petition for allowance of appeal denied,* 515 Pa. 586, 527 A.2d 546 (1987) (Implied Consent Law is designed to protect the public by providing an effective means of denying intoxicated motorists the privilege of using the roads); *Hando v. Commonwealth,* 84 Pa.Cmwlth. 63, 478 A.2d 932 (1984); *Wisniewski v. Commonwealth,* 73 Pa.Cmwlth. 318, 457 A.2d 1334 (1983).

In considering Ponce's double jeopardy challenge in this case, this court is required to determine the purposes served by the suspension of his operating privileges under the Implied Consent Law. *Sweeny.* As it has been previously noted, the mandatory suspension of a licensee's operating privileges following a conviction for driving under the influence of alcohol is a remedial sanction that is civil in nature. *Commonwealth v. Wolf,* 534 Pa. 283, 632 A.2d 864 (1993); *Zanotto v. Department of Transportation,* 83 Pa.Cmwlth. 69, 475 A.2d 1375 (1984). The suspension of a licensee's operating privileges under these circumstances serves not so much as punishment, but rather serves the remedial goal of protecting the public against the licensee's unsafe driving habits. *Id.* Because the suspension following a conviction for driving under the influence of alcohol serves this remedial goal, it does not constitute punishment for purposes of a double jeopardy analysis under the directives of *Halper.*

However, in the instant case the suspension of Ponce's operating privileges followed his *acquittal* for the offense of driving under the influence of alcohol. Therefore, we must consider whether this civil sanction can be characterized only as a deterrent or as punishment for the conduct in question. *Sweeny.* If so, then the Double Jeopardy Clause

would preclude the imposition of this sanction. *Id.*

As noted *infra*, the remedial purpose of the Implied Consent Law is to reduce the number of motorists driving while under the influence of alcohol on Commonwealth roadways, and to provide the police with evidence to prosecute an intoxicated driver. *Occhibone; McFarren; Kostyk; Sheakley; Hando; Wisniewski.* To this end, subsection (a) of the Implied Consent Law provides that any person who operates a motor vehicle on the Commonwealth's roadways consents to one or more chemical tests to determine the alcoholic content of the blood if a police officer has reasonable grounds to believe that the person was driving while under the influence of alcohol. 75 Pa.C.S. § 1547(a).

To achieve its remedial purpose, subsection (b) of the Implied Consent Law also provides that if a licensee is placed under arrest for driving under the influence and refuses to submit to the request chemical testing, his operating privileges shall be suspended for a 12–month period. 75 Pa.C.S. § 1547(b)(1). In addition, under subsection (c) of the Implied Consent Law, if the licensee submits to the chemical testing, the results of the tests are admissible in any summary or criminal proceeding in which the licensee is charged with driving under the influence of alcohol. 75 Pa.C.S. § 1547(c). Should the licensee refuse to submit to the requested chemical testing, under subsection (e) of the Implied Consent Law testimony regarding the refusal and the circumstances surrounding the refusal is also admissible in any summary or criminal proceeding in which the licensee is charged with driving under the influence of alcohol. 75 Pa.C.S. § 1547(e).

Applying all of the foregoing to the facts presented in the instant appeal, it is clear to me that the continued suspension of Ponce's operating privileges under the Implied Consent Law is a punitive civil sanction which is prohibited by the Double Jeopardy Clause of the United States Constitution. While Ponce was charged with the offense of driving under the influence of alcohol, the remedial purpose of the Implied Consent Law, to remove a suspected intoxicated driver from the roadways and to provide evidence for his criminal prosecution, was served. Presumably, during the prosecution of that charge the Commonwealth introduced testimony regarding Ponce's refusal to submit to chemical testing and the circumstances surrounding his refusal pursuant to subsection (e) of the Implied Consent Law, 75 Pa.C.S. § 1547(e).

However, once the Commonwealth failed to demonstrate that Ponce was intoxicated at the time of the accident, the remedial purpose of the Implied Consent Law was no longer served by the continued suspension of his operating privileges. At this point, any need for the suspension of Ponce's operating privileges was entirely unrelated to his operation of his motor vehicle while under the influence of alcohol. As the continued suspension of Ponce's operating privileges no longer serves the remedial purpose of the Implied Consent Law, it may fairly be characterized only as a deterrent or as punishment. The Double Jeopardy Clause precludes DOT from placing licensee in jeopardy of the imposition of this sanction. *Sweeny.*

The fact that the continued suspension of Ponce's operating privileges no longer serves this remedial purpose is demonstrated by the factual inquiry regarding his intoxication which was addressed by the trial court at the hearing *de novo.* At the hearing, the only relevant inquiry on this issue was whether or not Officer Retort had reasonable grounds to believe that Ponce operated his vehicle under the influence of alcohol. *See Department of Transportation, Bureau of Driver Licensing v. Gonzalez,* 110 Pa.Cmwlth. 379, 532 A.2d 533 (1987), *petition for allowance of appeal denied,* 518 Pa. 621, 541 A.2d 748 (1988); *Department of Transportation, Bureau of Traffic Safety v. Dreisbach,* 26 Pa.Cmwlth. 201, 363 A.2d 870 (1976).

However, the test for determining whether or not a police officer has reasonable grounds to believe that an individual has operated a vehicle while under the influence of alcohol is not very demanding, and the officer need not be correct in his belief. *Gonzalez; Dreisbach.* The only valid inquiry on this issue is whether, viewing the facts and circumstances as they appeared at that time, a reasonable person in the officer's position could have

concluded that the licensee was operating the vehicle while under the influence of alcohol. *Gonzalez; Dreisbach.* It is not relevant that the licensee can establish a cause other than intoxication for the behavior observed by the officer. *Id.* The only relevant factual defense would be a showing that the licensee's behavior was not, in fact, as the officer had testified. *Id.*

Thus, at the *de novo* hearing in this case, the only valid inquiry on Ponce's purported intoxication was whether or not Officer Retort reasonably believed that Ponce had been driving while under the influence of alcohol at the time of the accident. Whether or not Officer Retort was correct in this belief, or whether or not Ponce was, in fact, intoxicated at that time, were not relevant to that proceeding. I fail to see how the remedial purpose of the Implied Consent Law is furthered by a proceeding in which Ponce's intoxication at the time of operation is irrelevant.

Unable to demonstrate Ponce's intoxication at the time of trial, the Commonwealth is now seeking to prevent him from operating a motor vehicle based solely on Officer Retort's suspicion that he was intoxicated at the time of the accident, even though Officer Retort may have been incorrect in his belief. A suspension imposed under these circumstances is patently unfair, and constitutes a second attempt by the Commonwealth to punish Ponce for his suspected operation of a motor vehicle while under the influence of alcohol. I believe that the imposition of this type of punitive civil sanction is precluded by the Double Jeopardy Clause. *Sweeny.*

To rebut Ponce's claim, DOT first argues that the Double Jeopardy Clause is inapplicable to the suspension imposed in this case because the refusal to submit to chemical testing, after arrest for driving while under the influence of alcohol, is not an "offense" within the meaning of the Fifth Amendment to the United States Constitution, and it is a purely civil matter which is independent of any criminal proceedings.

However, as this court noted in *Sweeny,* in order to determine whether double jeopardy applies to administrative proceedings, we must look, not to the legislature's classifica-

tion of the penalty as being civil or criminal, but instead, to the penalty which is imposed and the purposes that penalty may fairly said to serve. *Sweeny,* 666 A.2d at 1139, citing *Halper.* If the civil sanction can be characterized only as a deterrent or as punishment for the conduct in question, then double jeopardy would prevent the imposition of that sanction. *Id.* Thus, the civil/criminal distinction which DOT wishes to invoke is not dispositive of Ponce's double jeopardy claim.

DOT next argues that the Double Jeopardy Clause does not bar the continued suspension of Ponce's operating privileges as his refusal to submit to chemical testing is conduct which differs both spatially and temporally from his operation of a vehicle while under the influence of alcohol. DOT also argues, paradoxically, that the offense of driving while under the influence of alcohol and a suspension under the Implied Consent Law contain separate elements, thereby precluding the application of the Double Jeopardy Clause. These claims are untenable.

As noted herein, the remedial purpose of the Implied Consent Law is to reduce the number of motorists driving while under the influence of alcohol on Commonwealth roadways, and to provide the police with evidence to prosecute an intoxicated driver. *Occhibone; McFarren.* The event triggering both a prosecution for driving while under the influence of alcohol and a suspension under the Implied Consent Law is the licensee's purported operation of a vehicle while under the influence of alcohol. Both of these statutory provisions seek to prevent licensees from engaging in this prohibited conduct. To argue that a suspension under the Implied Consent Law is completely unrelated to this prohibited conduct, or that it does not seek to prevent this prohibited conduct, is mere sophistry.

In addition, the fact that the offense of driving while under the influence of alcohol and a suspension imposed under the Implied Consent Law contain different elements does not preclude the application of the Double Jeopardy Clause. In *Kurth Ranch,* the Montana Department of Revenue imposed the prohibited tax for the possession and

storage of dangerous drugs on all of the six respondents in that case. However, five of the six respondents had pleaded guilty to the offense of conspiracy to possess drugs with the intent to sell. Clearly, a tax imposed for the possession and storage of drugs contains disparate elements from the offense of criminal conspiracy to possess drugs with the intent to sell. However, the United States Supreme Court applied the Double Jeopardy Clause to preclude the assessment of that tax on all of the respondents. Accordingly, it is evident that the Double Jeopardy Clause may preclude the imposition of the civil sanction in the instant case even though the offense of driving while under the influence of alcohol contains different elements from those in a suspension imposed under the Implied Consent Law.

Finally, DOT argues that the continued suspension of Ponce's operating privileges under the Implied Consent Law does not violate the Double Jeopardy Clause because it is remedial in nature and not designed to punish the particular licensee. However, as discussed *infra*, the remedial purpose of the Implied Consent Law is not furthered by the continued suspension of Ponce's operating privileges. Clearly, in this case the continued suspension of his operating privileges is a sanction which can be classified only as a deterrent or retribution for his purported operation of a vehicle while under the influence of alcohol. Because this civil sanction can be characterized only as a deterrent or as punishment for this prohibited conduct, the Double Jeopardy Clause precludes the Commonwealth from placing Ponce in jeopardy of the imposition of that sanction. *Sweeny.*