906 A.2d 1153

**Matthew Steven DRABIC, Appellee,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Supreme Court of Pennsylvania.

Argued April 5, 2006.

Decided Sept. 27, 2006.

Timothy P. Wile, Esq., Terrance M. Edwards, Esq., PA Department of Transportation, Harrisburg, for Bureau of Driver Licensing.

Dean Walid Ibrahim, Esq., Ibrahim & McKillop, P.C., Doylestown, for Matthew Steven Drabic.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

672

## *OPINION*

Justice BALDWIN.

The issue presented in this case is whether collateral civil consequences of criminal acts, in this instance suspensions of operating privileges (*i.e.,* driver's licenses), should be merged to accord with the merger of the underlying criminal convictions from which the collateral civil consequences flow. Although this is a question of first impression for this Court, the lower courts of this Commonwealth have merged such suspensions at least since the Commonwealth Court decided *Zimmerman v. Commonwealth,* 759 A.2d 953 (Pa.Cmwlth.Ct.2000) *(en banc), alloc. denied,* 567 Pa. 753, 788 A.2d 382 (2001). We find that this is the result intended by the subject statute, 75 Pa.C.S. § 1532. Thus we affirm the Commonwealth Court's decision.

Matthew Steven Drabic (Drabic) was involved in a motor vehicle accident on November 27, 2003. A passenger in his vehicle died as a result of the accident. Drabic pled guilty to fourteen offenses.[1] Subsequently, the Director of the Pennsylvania Department of Transportation's Bureau of Driver Licensing (PennDOT) issued the following series of suspensions, pursuant to 75 Pa.C.S.A. § 1532 (Suspension of operating privilege),[2] sending an individual notice to Drabic for each:

1. The charges were: (1) homicide by vehicle while driving under the influence (75 Pa.C.S. § 3735); (2) aggravated assault by vehicle while driving under the influence (75 Pa.C.S. § 3735.1); (3) homicide by vehicle/safe speed (75 Pa.C.S. § 3732); (4) homicide by vehicle/reckless driving (75 Pa.C.S. § 3732); (5) accidents involving death or personal injury while not properly licensed (75 Pa.C.S. § 3742.1); (6) involuntary manslaughter (18 Pa.C.S. § 2504); (7) driving under the influence (75 Pa.C.S. § 3731); (8) recklessly endangering another person (18 Pa.C.S § 2705); (9) offenses related to alcohol (75 Pa.C.S. § 6308); (10) driving with a suspended license (75 Pa.C.S. § 1543(b)); (11) driving on roadways laned for traffic (75 Pa.C.S. § 3309); (12) driving vehicle at safe speed (75 Pa.C.S. § 3361); (13) reckless driving (75 Pa.C.S. § 3736); and (14) maximum speed limits (75 Pa.C.S. § 3362).

2. (a) One-year suspension.—The department shall suspend the operating privilege of any driver for one year upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on any of the following offenses:

   (1) Any felony in the commission of which a court determines that a vehicle was essentially involved.

| Criminal Offense | Length of Operator's Privilege Suspension |
|---|---|
| 75 Pa.C.S. § 3735 (homicide by vehicle while driving under the influence) | 3 years |
| 75 Pa.C.S. § 3735.1 (aggravated assault by vehicle while driving under the influence) | 1 year |
| 75 Pa.C.S. § 3732 (homicide by vehicle) | 3 years |
| 75 Pa.C.S. § 3742.1 (Accidents involving death or personal injury while not properly licensed) | 1 year |
| 75 Pa.C.S. § 3731 (Driving under the influence of alcohol or controlled substance) | 1 year |
| 75 Pa.C.S. § 6308 (offenses related to alcohol) | 2 years |
| 75 Pa.C.S. § 1543(b) (driving while operating privilege suspended) | 1 year |
| 75 Pa.C.S. § 3361 (driving vehicle at safe speed) | 10 days |
| 75 Pa.C.S. § 3736 (reckless driving) | 6 months |
| 75 Pa.C.S. § 3362 (Maximum speed limits) | 20 days |
| Total: | 12 years, 6 months and 30 days |

On August 11, 2004, Drabic filed an appeal with the Court of Common Pleas of Bucks County for all of the suspensions except those imposed for the driving with a suspended license

. . .

(3) Any violation of the following provisions:

Section 3735.1 (relating to aggravated assault by vehicle while driving under the influence).

Section 3742 (relating to accidents involving death or personal injury while not properly licensed).

Section 3742.1 (relating to accidents involving death or personal injury while not properly licensed).

Section 7111 (relating to dealing in titles and plates for stolen vehicles).

Section 7121 (relating to false application for certificate of title or registration).

Section 7122 (relating to altered, forged or counterfeit documents and plates).

(a.1) Three-year suspension.—The department shall suspend the operating privilege of any driver for three years upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on a violation of any of the following offenses:

(1) Any violation of section 3732 (relating to homicide by vehicle).

(2) Any violation of section 3735 (relating to homicide by vehicle while driving under influence).

. . .

75 Pa.C.S. § 1532.

(§ 1543(b)) and offenses related to alcohol (§ 6308) violations. A *de novo* hearing was conducted on February 9, 2005 by the trial court, during which Drabic conceded that the suspension for § 3735, homicide by vehicle while driving under the influence (homicide by vehicle-DUI), was proper. Drabic argued that all the other suspensions of his driver's license should have merged into that greater offense.

The trial court agreed in part and merged driving under the influence (§ 3731) (DUI) and aggravated assault by vehicle while driving under the influence (§ 3735.1) (AA–DUI) into homicide by vehicle while driving under the influence (§ 3735). The Court of Common Pleas merged the reckless driving (§ 3736) violation into the homicide by vehicle (§ 3732) violation. All remaining statutory appeals were denied. Based upon this, the trial court reduced Drabic's total driver's license suspension by two years and six months.

PennDOT appealed these rulings to the Commonwealth Court. In a memorandum opinion, a panel of the Commonwealth Court affirmed in part and reversed in part.[3] *Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Drabic*, Nos. 738–739 CD 2005, slip op. at 7, 883 A.2d 730 (Pa.Cmwlth.Ct. September 9, 2005). In its opinion, the Commonwealth Court first declined PennDOT's express invitation to overrule *Zimmerman*. In *Zimmerman*, the Commonwealth Court faced an analytically identical question. "The issue before the court is whether [criminal convictions] merge for purposes of operating privilege suspension[s]". *Zimmerman*, 759 A.2d at 957.

Judge Pellegrini, writing for the panel in the instant case, stated that *Zimmerman* "remains binding, precedential law." *Id.* at 5. Noting that this Court denied Allocatur in *Zimmer-*

3. The Commonwealth Court did not affirm the entire holding of the trial court. Rather, it determined that an additional six-month suspension for reckless driving was warranted. It modified the trial court's order to impose this additional suspension, but otherwise affirmed the trial court's rulings on each of Drabic's appeals. *Commonwealth v. Drabic*, Nos. 738–739 C.D.2005, slip op. at 6–7, 883 A.2d 730 (Pa. Cmwlth.Ct. September 9, 2005). The reckless driving suspension is not at issue in the instant appeal.

*man,* Judge Pellegrini explained that the Commonwealth Court had "no inclination" to overrule its own precedent.[4] *Id.* Before this Court is PennDOT's challenge to the merger of Drabic's operator's privilege suspension imposed for his conviction of aggravated assault while driving under the influence (75 Pa.C.S. § 3735.1) and the suspension imposed for his conviction of homicide by vehicle while driving under the influence (75 Pa.C.S. § 3735).

The parties do not dispute the facts in the case *sub judice,* rather, the question presented is a pure question of law. Our standard of review is *de novo. Seven Springs Farm, Inc. v. Croker,* 569 Pa. 202, 208 n. 1, 801 A.2d 1212, 1216 n. 1 (2002). Questions of law are accorded a plenary scope of review. *McNeil v. Jordan,* 586 Pa. 413, 894 A.2d 1260, 1268 (2006).

In the first instance, the parties disagree as to whether the doctrine of merger even applies in the instant context, i.e., when collateral civil consequences are imposed. We need not directly address this question, since we believe the plain language of the statute directs that only a single suspension can be imposed based upon a single criminal episode. Regardless of whether the Commonwealth is correct, and the doctrine of merger is not properly applied to collateral civil consequences, or whether Appellee properly directs our attention to the statutory construction act and *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20 (1994) (holding that the doctrine of merger is a rule of statutory construction), the

---

4. The Commonwealth Court also disagreed with PennDOT's contention that *Zimmerman* did not apply because, on the face of documents PennDOT received after Drabic was convicted, there was no way to know that the victim of the aggravated assault by vehicle while driving under the influence (75 Pa.C.S. § 3735.1) was the same victim for the homicide by vehicle while driving under the influence (75 Pa.C.S. § 3735). In other words, PennDOT contended that it could impose the separate sanctions because, as far as PennDOT knew, there was more than one victim thus taking the facts outside of the rule in *Zimmerman.* The Commonwealth Court characterized these contentions as disingenuous, noting that in oral argument to the trial court it was clear that there was only one victim. The Commonwealth Court rejected this argument on waiver grounds under Pa.R.A.P. 302. PennDOT did not raise this issue here.

inquiry in either event must be based on the language of the statute at issue.

The key language in the subsections at issue is "the driver's conviction ... any of the following offenses." 75 Pa.C.S. § 1532. Recently, in *Freundt v. Commonwealth*, 584 Pa. 283, 883 A.2d 503 (2005), we construed § 1532(c) explaining that where the legislature used the separate terms "conviction" and "offense" it must have intended for the words to have different meanings. Thus, while the merger of the suspensions of operating privileges under 75 Pa.C.S. §§ 1532(a) and 1532(a.1) is an issue of first impression for this Court, in *Freundt* we explained that, in the context of § 1532(c), "when there is a conviction, the appropriate [license] suspension shall be determined by whether or not the conviction stemmed from a single criminal episode, or multiple criminal episodes." *Freundt* at 290, 883 A.2d at 507 (citations omitted).

Ms. Freundt (Freundt) pled guilty to sixteen counts of acquiring or obtaining a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge (35 P.S. § 780–113(a)(12)). PennDOT sent Freundt sixteen separate notices that her driving privileges were being suspended pursuant to 75 Pa.C.S. § 1532(c). Freundt appealed. The Court of Common Pleas of Carbon County denied the appeal and reinstated the suspensions, indicating that it was unable to determine whether there were or were not multiple violations involved in Freundt's convictions.

Freundt then appealed to the Commonwealth Court, which concluded that with respect to § 1532(c) and its predecessor, 35 P.S. § 780–113(m), a single criminal episode results in a single license suspension. *Freundt* at 290, 883 A.2d at 507. Like the instant case, in *Freundt*, PennDOT asserted that the plain language of the statute required it to impose separate suspensions for each conviction. *Id.* at 287, 883 A.2d at 505. The Commonwealth Court disagreed based upon its own line of cases that has indicated that separate criminal episodes are required in order for PennDOT to impose multiple suspensions. *Freundt v. DOT, Bureau of Driver Licensing*, 804 A.2d

706, 710–12 (Pa.Cmwlth.Ct.2002). PennDOT then appealed to this Court.

Relying on our interpretation of the statute, we affirmed, because the statute said that the operating privilege of a person would be suspended after PennDOT had received a record of "the person's **conviction** of any **offense** involving the possession, sale, delivery ... of any controlled substance...." 75 Pa.C.S. § 1532(c) (emphasis added). Chief Justice Cappy, writing for a majority, pointed out that we must presume that since the General Assembly used both the word "conviction" and the word "offense," it must have meant for the words to have separate meanings. *Freundt*, 584 Pa. at 289–90, 883 A.2d at 506–07. This Court also noted that, while the issue of whether one or multiple suspensions should result from a single criminal episode was an issue of first impression for the Supreme Court, there was a long line of cases from the Commonwealth Court which consistently interpreted § 1532(c) as requiring that only one suspension issue for each criminal episode. *Id.* (citing *Gregg v. DOT, Bureau of Driver Licensing*, 851 A.2d 253 (Pa.CmwlthCt.2004); *Carter v. DOT, Bureau of Driver Licensing*, 838 A.2d 869 (Pa.Cmwlth.Ct.2003); *Yadzinski v. DOT, Bureau of Driver Licensing*, 723 A.2d 263 (Pa.Cmlthw.Ct.1999); *Lauer v. Department of Transp.*, 666 A.2d 779 (Pa.Cmwlth.Ct.1995); *Brosius v. Department of Transp., Bureau of Driver Licensing*, 664 A.2d 199 (Pa. Cmwlth.Ct.1995); *Heisterkamp v. DOT, Bureau of Driver Licensing*, 165 Pa.Cmwlth. 128, 644 A.2d 262 (1994); *Department of Transp., Bureau of Driver Licensing v. Hardy*, 160 Pa.Cmwlth. 427, 635 A.2d 230 (1993)). Therefore, in *Freundt*, we concluded that based on the plain language of the statute "conviction of any offense" as used in § 1532(c) refers to a single criminal episode.

The same statute, § 1532, is at issue in the case *sub judice*, but different subsections are implicated. Nonetheless, in the subsections scrutinized here, the Legislature again discusses "the driver's **conviction** of ... any of the following **offenses**." As we did in *Freundt*, we find that the Legislature's use of the separate terms "conviction" and "offenses" to be significant.

Specifically, "conviction of ... any of the following offenses" stems from a single criminal episode. We see no reason to depart from our reasoning in *Freundt.* We acknowledge that the analysis in *Freundt* was simplified by the more generalized grammatical construct of subsection (c), i.e., "conviction of any offense involving the possession, sale, [etc.] of any controlled substance," as opposed to the slightly different grammatical construct of the two subsections at issue here ((a) and (a.1)), but see no reason to arrive at a different result as the key language remains constant: "conviction of ... any ... offense[ ]."

Moreover, as was the case in *Freundt,* here again the Commonwealth Court merged the suspensions pursuant to a long line of its cases, the most prominent of which is *Zimmerman v. Commonwealth,* 759 A.2d 953 (Pa.Cmwlth.Ct.2000) In *Zimmerman,* the licensee pled guilty to ten offenses including DUI and AA–DUI. *Id.* at 955. PennDOT issued both a suspension and a revocation of Zimmerman's operating privilege pursuant to the version of § 1532 then in effect. *Id.* The trial court concluded that because all of the elements of DUI were also elements of AA–DUI, the suspensions for those two offenses merge in the same manner as the underlying convictions merge. PennDOT appealed, relying upon a series of cases from the Commonwealth Court where license suspensions were not merged. The Commonwealth Court found these cases inapposite, indicating that "the violators in these cases either committed offenses with distinct elements or committed offenses arising from separate acts." *Id.* at 957 (citing *Department of Transportation, Bureau of Driver Licensing v. Lescisin,* 156 Pa.Cmwlth. 666, 628 A.2d 1208 (1993); *Department of Transportation, Bureau of Driver Licensing v. Maddesi,* 138 Pa.Cmwlth. 467, 588 A.2d 580 (1991); *Department of Transportation, Bureau of Traffic Safety v. Bishop,* 102 Pa.Cmwlth. 483, 518 A.2d 897 (1986); *Parks v. Commonwealth,* 40 Pa.Cmwlth. 544, 398 A.2d 230 (1979)).

Indeed, the *Zimmerman* court noted that it had applied the doctrine of merger in 1991 to the allocation of points to a licensee. *Maddesi,* 138 Pa.Cmwlth. at 474, 588 A.2d at 583.

The Commonwealth Court recognized in *Maddesi* that § 1535(b) prohibited "the separate assignment of points for multiple violations arising from the same act only where proof of one violation also proves another violation." *Id.* Therefore, the Commonwealth Court explained that where any underlying convictions would merge, the collateral civil consequences, in this case "points" on a license, cannot be separately assessed. *Id.*

Thus, the Commonwealth Court concluded that "[s]eparate administrative penalties for multiple convictions arising from the same transaction are prohibited where the convictions are greater and lesser included offenses." *Zimmerman*, 759 A.2d at 957 (citing *Xenakis v. Department of Transportation, Bureau of Driver Licensing*, 702 A.2d 572 (Pa.Cmwlth.Ct.1997)).

PennDOT argues that the Commonwealth Court's determination was erroneous, in that operator's privilege suspensions should not be subjected to the doctrine of merger of related offenses, because the doctrine has no bearing on non-criminal sanctions. PennDOT encourages us to delve into the statutory construction statutes, and the legislative intent behind the license suspensions, to determine whether merger should apply.

Without contesting the non-criminal nature of the license suspensions, Appellee Drabic notes that the Legislature was free at the time it wrote § 1532 to provide either that merger should or should not apply to these provisions and it chose not to do that. Indeed, as Drabic noted in his brief, "[i]t is presumed that members of the General Assembly and their constituents are aware that the doctrine of merger is being applied in license suspension cases. It is the function of the General Assembly to enact laws to prohibit such merger if, in fact, that is the legislative intent." Brief of Appellee at 2.

We recognize that the doctrine of merger of related offenses has its roots in the double jeopardy provisions of both the United States [5] and Pennsylvania [6] Constitutions. Double

5.  U.S. Const. amend. V.

6.  Pa. Const. art. 1 § 10.

jeopardy protections forbid the imposition of multiple punishments for a single criminal act that constitute greater and lesser-included offenses. *Commonwealth v. Buffington,* 574 Pa. 29, 39, 828 A.2d 1024, 1028 (2003). However, merger has been applied in the related context of administrative consequences in this Commonwealth for over a decade. While the underpinnings of the application of merger in this context may not lie in double jeopardy, we find that the Legislature articulated no proscription against collateral civil consequences merging along with the underlying criminal convictions.

Finally, PennDOT also advances a public policy argument, contending that the intent of the Legislature in providing for these collateral civil consequences, unlike their criminal counterparts, is not to punish the driver but rather to protect the public from these drivers. While this argument is noble, it is unpersuasive. We cannot accept PennDOT's argument that public safety concerns militate a conclusion that, under § 1532, operator's privilege suspensions do not merge given our interpretation of the plain language of § 1532 and the Legislature's intent.

▮ The sanctions at issue here, related to the convictions for AA—DUI and homicide by vehicle—DUI, cannot be construed as PennDOT suggests. Here, the suspensions derived directly from the underlying criminal convictions and there is no question that those underlying criminal convictions merge. The decision of the Commonwealth Court is affirmed.

Chief Justice CAPPY and Justice CASTILLE and BAER join the opinion.

Justice NEWMAN files a dissenting opinion in which Justice EAKIN joins.

Justice SAYLOR files a dissenting opinion.

Justice NEWMAN, dissenting.

I respectfully dissent from the Majority Opinion. Additionally, I join the well-reasoned Dissenting Opinion of Mr. Justice

Saylor in his discussion of *Freundt v. PennDOT*, 584 Pa. 283, 883 A.2d 503 (2005). I find myself bound by the plain language of 75 Pa.C.S. § 1532 and, therefore, would not utilize the criminal doctrine of merger in a civil matter where double jeopardy concerns are not implicated absent an express directive to do so by the Legislature. Because the statute at issue does not contain such language, I would uphold the separate suspensions for each individual offense for which Matthew Drabic (Appellee) has been convicted.

At issue is the doctrine of merger of related offenses, which "is a rule of statutory construction designed to determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction." *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 21 (1994) (holding that aggravated assault is a lesser included offense of attempted murder); *accord Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (opining that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to determine whether they constitute two offenses or only one is to determine whether each provision requires proof of a fact that the other does not).

As this matter involves a civil consequence of a criminal act, we must start with the applicable sections of the civil sanctions provided by the Motor Vehicle Code:

(a) **One-year suspension.**—The department shall suspend the operating privilege of any driver for one year upon receiving a certified record of the driver's **conviction** of or an adjudication of delinquency **based on any of the following offenses:**

* * *

(3) Any violation of the following provisions: Section 3735.1 (relating to aggravated assault by vehicle while driving under the influence).

* * *

**(a.1) Three-year suspension.**—The department shall suspend the operating privilege of any driver for three years upon receiving a certified record of the driver's **conviction of or an adjudication of delinquency based on a violation of any of the following offenses:**

* * *

(2) Any violation of section 3735 (relating to homicide by vehicle while driving under influence).

75 Pa.C.S. § 1532(a), (a.1) (emphasis added). Accordingly, the statute indicates two separate penalties for Aggravated Assault while DUI and Homicide by Vehicle while DUI. *Compare* 75 Pa.C.S. § 1542(b) (requiring separate acts to sustain multiple penalties: "Three convictions arising from separate acts of any one or more of the following offenses. . . ."). Interestingly, both parties claim that the plain language of the statute renders a result in his or its favor. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

PennDOT argues that the penalties are separate and distinct and that no mention of merger is made. PennDOT further avers that merger is a criminal doctrine and there is no indication that the General Assembly intended for merger to apply in the plain language of this statute, involving an agency's institution of civil sanctions.

Conversely, Appellee argues that by omitting the fact that merger does not apply, and knowing that merger applies in criminal matters, the General Assembly evinced an intent to allow merger in the civil arena of license suspensions. I fail to find favor in the plain language interpretation proposed by Appellee or adopted by the Majority. "If the Legislature intended for merger not to apply, then § 1532 would be explicit in so saying. We cannot add a provision prohibiting merger to § 1532 on PennDOT's request because the Legisla-

ture has never done so itself." Maj. op. at 678–79, 906 A.2d at 1158.

The omission of a negative, that is, not including language that merger does not apply, is not indicative of a desire on the part of the General Assembly for merger to apply. An action, in general, should be mandated and not implied when conducting a plain-language reading. The language differentiates the two acts and applies two different suspensions with no mention of merging the suspensions.[1] Accordingly, the plain language of the statute weighs in favor of imposing individual suspensions for Aggravated Assault while DUI and Homicide by Vehicle while DUI.

In the present matter, the Commonwealth Court went beyond the plain language of the statute and instead cited prior precedent. The Commonwealth Court relied upon *Zimmerman v. Department of Transportation*, 759 A.2d 953 (Pa. Cmwlth.2000) *(en banc), petition for allowance of appeal denied,* 567 Pa. 753, 788 A.2d 382 (2001), and *Xenakis v. Department of Transportation*, 702 A.2d 572 (Pa.Cmwlth. 1997) (imposing three separate suspensions when the three convictions were distinct and separate), in determining that convictions may merge in a license suspension action.

In *Zimmerman*, the Commonwealth Court analyzed two suspensions imposed following convictions for both DUI and Aggravated Assault by Vehicle while DUI. Notably, Aggravated Assault while DUI is defined as follows:

**(a) Offense defined.**—Any person who negligently causes serious bodily injury to another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury.

75 Pa.C.S. § 3735.1. The statute incorporates the lesser offense of DUI as a necessary component for Aggravated As-

---

1. If the legislature had desired for merger to apply, it would have been a simple matter to include, in language after the current subsection 1532(a.1), a statement that a three-year suspension for homicide by vehicle while DUI includes the suspension all lesser includes offenses (*e.g.*, DUI and Aggravated Assault while DUI).

sault while DUI. The doctrine of merger in criminal matters would clearly dictate that the sentences merge.

The Commonwealth Court, by virtue of relying on *Zimmerman*, erred in holding that the merger doctrine was appropriate for license suspension purposes in PennDOT proceedings. The Commonwealth Court in *Zimmerman* cited three cases in support of the proposition that the suspensions should merge. *See Anderson, supra* (holding that aggravated assault is a lesser included offense of attempted murder); *Commonwealth v. Everett*, 550 Pa. 312, 705 A.2d 837 (1998) (holding the same and stating that it is within the discretion of the trial court to choose to sentence for either the lesser included offense or the greater offense); *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593, 599 (1998) ("[T]he elements of homicide by vehicle as charged are subsumed in the elements of involuntary manslaughter and neither offense requires proof which the other does not. Because imposing separate sentences violates double jeopardy the two offenses merge for [criminal] sentencing purposes.") (internal footnote deleted).[2]

2. Paradoxically, the Commonwealth Court in this case noted that:

> In *Guidas v. Department of Transportation, Bureau of Driver Licensing*, 655 A.2d 228 (Pa.Cmwlth.1995), citing *Department of Transportation, Bureau of Traffic Safety v. Antram*, 48 Pa.Cmwlth. 135, 409 A.2d 492 (Pa.Cmwlth.1979), we held that while the lesser violation of reckless driving did, in fact, merge into the greater violation of Homicide by Vehicle and constituted one act, and where the trial court had made findings of fact or conclusions of law different from those made by PennDot, the trial court was vested with the authority to modify a penalty imposed by PennDot and order the six-month penalty for a violation of 75 Pa.C.S. § 1532(b)(1) for reckless driving. "Section 1532 does not require that each conviction arise out of a 'separate act.'" *Id.* at 232. *See also Richards v. Department of Transportation, Bureau of Driver Licensing*, 827 A.2d 575 (Pa.Cmwlth. 2003), *petition for allowance of appeal denied*, 576 Pa. 727, 841 A.2d 533 (2003) [upholding the imposition of a one-year suspension and five-year suspension of drivers' license privileges based on the licensee's underlying convictions for two counts of Aggravated Assault by vehicle while DUI arising from single incident, and holding that the doctrine of merger of related offenses did not preclude imposition of both suspensions as administrative sanctions for underlying convictions arising from same incident].

Cmwlth. Ct. Op. at 6–7 (internal footnote omitted) (citations modified). As such, the Commonwealth Court affirmed its prior holding that the same criminal act may in fact result in multiple convictions. In the

However, all three cases may be distinguished from the instant matter since they involved the criminal aspect of the convictions rather than the civil consequences that follow.

Neither party raised *Freundt v. Department of Transportation*, 584 Pa. 283, 883 A.2d 503 (2005); however, the Majority notes that it is similar to a case decided this past year. In *Freundt*, this Court interpreted Section 1532(c) to merge drug-related charges for the purposes of license suspension. I joined the strong dissent of Justice Eakin, which Justice Saylor also joined,[3] and wrote a separate dissent.

> [T]he majority holds an "offense" for purposes of § 1532(c) means a single criminal episode; I believe this interpretation is inconsistent with both the language and the aim of § 1532(c). Secondly, even if the statute means "episode" when it says "offense," the burden of establishing that 16 crimes over several months are really a single episode must fall on the party so claiming-it cannot be PennDOT's burden to establish the "lack of single episode" when it is not a party to the underlying criminal investigation or conviction. . . .

*Id.* at 508 (Eakin, J., dissenting, joined by Newman, Saylor, J.J.). For reasons relating to the history and purpose of the doctrine of merger, discussed further *infra*, I stand by my dissent in *Freundt*. Moreover, the plain language of the instant matter differs slightly in that it allows for the imposition of suspensions for a "conviction . . . based on any of the following **offenses**," 75 Pa.C.S. § 1532(a), (a.1) (emphasis added), whereas subsection 1532(c) provides for suspension based upon "conviction of any **offense**[.]" 75 Pa.C.S. § 1532(c) (emphasis added). Hence, an argument could be made that the language of subsections 1532(a) and 1532(a.1) provides for a suspension based on any of the multiple offenses that follow and, thus, is different from the single suspension for a single

instant matter, those convictions, by the plain language of the statute, give rise to separate suspensions.

**3.** *See id.* at 508 (Saylor, J., dissenting) ("I join the substance of Mr. Justice Eakin's dissenting opinion on the statutory interpretation point.").

offense involving any of the crimes listed in subsection 1532(c). However, I would find that in either case, the doctrine of merger should not apply.

Such a distinction starts with the nature of a driver's license suspension. In *Commonwealth v. Wolf*, 534 Pa. 283, 632 A.2d 864 (1993) (finding that driver was not entitled to stay of mandatory one-year suspension of his license during pendency of driver's appeal of his criminal conviction), this Court opined that:

> [t]he mandatory suspension of a driver's license upon conviction for DUI is a collateral civil penalty administratively imposed by [PennDOT] pursuant to the mandates of the Motor Vehicle Code **not** the Crimes Code. Thus, the mandatory suspension is not a direct criminal penalty, but rather, is a civil sanction wholly unrelated to Petitioner's appeal of the criminal conviction to the Superior Court.

*Id.* at 867 (internal footnote deleted). We have developed this position further and held that license suspensions are collateral civil consequences and not criminal penalties and that: (1) there was statutory authority for suspension for out-of-state offense equivalent to Pennsylvania DUI offense; (2) imposition of suspensions did not violate motorists' double jeopardy rights; (3) suspensions did not violate motorists' equal protection or due process rights; and (4) New Jersey DUI conviction of one motorist was equivalent to DUI in Pennsylvania. *Dep't of Transp. v. McCafferty*, 563 Pa. 146, 758 A.2d 1155 (2000); *accord Commonwealth v. Duffey*, 536 Pa. 436, 639 A.2d 1174(Pa.), *cert. denied*, 513 U.S. 884, 115 S.Ct. 223, 130 L.Ed.2d 149 (1994). In fact, in *Duffey*, this Court expressly allowed for a license suspension for out-of-state conduct and conviction as not violating either the double jeopardy clause or 18 Pa.C.S. § 111 (noting when prosecution is barred by former prosecution in another jurisdiction). This Court has clearly held that an administrative agency over which a criminal judge has no control cannot be considered criminal in nature. *Duffey*, 639 A.2d at 1177. We opined that: (1) loss of driving privileges is a **collateral civil consequence of conviction** for underage drinking and, accordingly, there is no requirement

that licensee know that consequence at time of guilty plea; (2) it is not proper for licensee to attack validity of criminal conviction upon which Department of Transportation (DOT) based its suspension in a civil proceeding; and (3) operating privileges suspensions for underage drinking are properly appealable to the Commonwealth Court. *Id.* "[W]e hold today that a licensee does not have to be warned of the collateral consequences of license suspension." *Id.* (holding additionally that we would recommend that a defendant be informed of the collateral consequence but that it is not necessary). The Commonwealth Court has followed this reasoning and noted our decision in *Duffey,* stating that "a license suspension is a collateral civil consequence of a criminal conviction, and there is no requirement that a criminal court advise a licensee that his or her conviction will result in a license suspension." *Xenakis,* 702 A.2d at 574 n. 1 (citing *Duffey, supra* ). For that reason, PennDOT concludes that the criminal doctrine of merger is inapposite.

Using the reasoning in *Duffey,* the concerns of double jeopardy and the constitutional protections against it, U.S. Const. amend. V, XIV, are not present when the matter is solely civil in nature. For this reason, I am compelled to find that, absent express language to the contrary, Section 1532 does not mandate merger and separate suspensions may be imposed. Furthermore, the sanctions imposed are remedial and not punitive in nature. PennDOT avers that the underlying concern of the merger doctrine is absent, specifically double jeopardy. *See Ponce v. Dep't of Transp.,* 685 A.2d 607, 610 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 548 Pa. 641, 694 A.2d 625 (1997) (holding that the suspension of driving privileges is remedial and not punitive in nature); *Urciuolo v. Dep't of Transp.,* 684 A.2d 1094 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 547 Pa. 747, 690 A.2d 1165 (1997) (same).

PennDOT notes that, in *Commonwealth v. Buffington,* 574 Pa. 29, 828 A.2d 1024, 1030 n. 9 (2003), this Court stated that *Blockburger* is to be "used as a means of assessing legislative

intent in the context of the double jeopardy protections against successive prosecutions and multiple punishments."

The United States Supreme Court has noted that the Double Jeopardy Clause: (1) "protects against a second prosecution for the same offense after acquittal[;] ... [ (2) ] protects against a second prosecution for the same offense after conviction[;] ... [and 3] protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (internal footnotes deleted). Prosecutions involve criminal matters and the punishments discussed involve the criminal sanctions and punishments imposed. License suspensions are a collateral civil consequence and not a punishment; and, as noted above, a defendant in a criminal case need not be informed of the collateral consequence, as it is not part of his or her criminal punishment. *Duffey, supra.*

Instead, the measures are of a more remedial nature. PennDOT argues that the recent increase in penalties for both homicide by vehicle while DUI and homicide by vehicle, from one year to three years' suspension, indicates that the legislative intent is to increase the potential suspension for any person convicted of any offense or offenses and keep those drivers off the road. PennDOT cites a litany of statistics to show the overwhelming danger posed by drunk drivers. This Court is well aware of the horrific cost to society due to drunk driving. We agree that part, if not all, of the reasoning behind a license suspension is: (1) that a drunk driver has shown himself or herself unfit to be trusted on the road; and (2) to protect the public at large. Such reasoning comes from the viewpoint of remediation and not from one of punishment. Accordingly, the secondary concern of double jeopardy, multiple punishments, is not at issue.

The plain language of Section 1532 coupled with the civil and remedial nature of the sanctions involved in the Motor Vehicle Code lead me to the conclusion that merger does not

apply. Consequently, I would reverse the Commonwealth Court.

Justice EAKIN joins this dissenting opinion.

Justice SAYLOR, dissenting.

I join Madame Justice Newman's dissenting opinion, but I have a moderately different perspective on the applicability of the recent decision in *Freundt v. PennDOT,* 584 Pa. 283, 883 A.2d 503 (2005).

At the outset, I recognize the effect of *Freundt* as precedent. Nevertheless, it is axiomatic that the binding holding of a decision must be read against its facts, *see Commonwealth v. McCann,* 503 Pa. 190, 195, 469 A.2d 126, 128 (1983); therefore, *Freundt* is not controlling relative to the distinct conduct at issue here, implicating a different subset of statutory provisions.

*Freundt* construed Section 1532(c) of the Vehicle Code, imposing suspensions based on a driver's "conviction of any offense involving the possession, sale, delivery, offering for sale or giving away of any controlled substance." 75 Pa.C.S. § 1532(c). A majority of the Court found that the words "conviction of any offense" in this statutory provision should be read to encompass larger criminal episodes involving numerous convictions for separate offenses. *See id.* at 291, 883 A.2d 503 883 A.2d at 507 ("[A]n offense, for purposes [75 Pa.C.S.] § 1532(c) amounts to a criminal episode."). The *Freundt* majority reasoned that the use of both of the words "conviction" and "offense" in conjunction "shows that the statute imposes a suspension *not merely for each conviction for every violation* of the Crimes Code, but for each conviction stemming from a criminal episode." *Freundt,* 584 Pa. 283, 883 A.2d at 506 (emphasis added). On this basis, the majority held that the driver should be subject to a single suspension period, although she had committed numerous violations for which she received multiple convictions.

*Freundt's* logic that "offense" meant "single criminal episode" and not "violation" cannot be transported to Sections

1532(a) and (a.1), because the Legislature was even more explicit in those sections in targeting violations. For example, Section 1532(a.1) requires a three-year suspension by Penn-DOT upon its receipt of a certified record of the driver's conviction *"based on a violation"* of designated offenses. 75 Pa.C.S. § 1532(a.1) (emphasis added). In delineating the specific violations to which the suspension was to attach, the Legislature specified *"[a]ny violation* of section 3732 (relating to homicide by vehicle)" and *"[a]ny violation* of section 3735 (relating to homicide by vehicle while driving under influence)." 75 Pa.C.S. § 1532(a.1)(1), (2) (emphasis added). Similarly, Section 1532(a) requires PennDOT to impose a one-year suspension of operating privileges upon receipt of a certified record of conviction based on *"[a]ny violation"* of statutory provisions including aggravated assault by vehicle while driving under the influence. 75 Pa.C.S. § 1532(a) (emphasis added). *Per force, Freundt's* rationale that the Legislature was not addressing specific violations because it utilized different terminology cannot stand in the context of a statute that explicitly targets "violations."

In summary, I did not find the majority rationale from *Freundt* persuasive in the context in which it arose, and I find it even less persuasive here. Further, I agree with Madame Justice Newman that the present majority's decision to ascribe criminal-sentence-like merger to the administrative suspension context finds no support in the statute or in any decision of this Court.