96 A.3d 1005

**William J. BELL, Appellee**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Supreme Court of Pennsylvania.

Submitted Feb. 25, 2014.

Decided July 21, 2014.

James Edward Dailey, Esq., Terrance M. Edwards, Esq., PA Department of Transportation for Bureau of Driver Licensing.

William J. Bell, pro se.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## OPINION

Justice STEVENS.

In this appeal, we address the questions of whether convictions for homicide by vehicle and homicide by vehicle while driving under the influence (DUI) merge for operating privilege suspension purposes under the Vehicle Code,[1] and, more generally, whether the criminal doctrine of merger is applicable to the collateral civil consequences which flow from merged, underlying criminal convictions. For the reasons that follow, we hold that the Commonwealth Court improperly found the criminal doctrine of merger is applicable in the civil arena of operating privilege suspensions under 75 Pa.C.S. §§ 1532(a), (a.1). Accordingly, we reverse.

## I. Facts and Procedural History

The parties do not dispute the minimal relevant facts. On April 19, 2011, while driving home from a funeral reception, Appellee William J. Bell (hereinafter "Bell") crossed the center line of a road and struck another vehicle. A woman was killed as a result of the impact. Following trial, on February 15, 2012, Bell was convicted of driving under the influence of alcohol or a controlled substance-bac.16+, 75 Pa.C.S.

1. 75 Pa.C.S. §§ 101 et seq.

§ 3802(c),[2] homicide by vehicle while DUI, 75 Pa.C.S. § 3735,[3] and homicide by vehicle, 75 Pa.C.S. § 3732.[4] He currently is incarcerated for those convictions.

In three, official notices mailed March 20, 2012, Appellant the Pennsylvania Department of Transportation, Bureau of Driver Licensing (hereinafter "PennDOT") notified Bell that it was suspending his operating privilege for a total of seven years. Specifically, PennDOT imposed a one-year suspension of Bell's operating privilege, effective February 15, 2012, in accordance with 75 Pa.C.S. § 3804(e)(2)(i), for the DUI conviction under 75 Pa.C.S. § 3802(c); a three-year suspension of his operating privilege, effective February 15, 2013, in accordance with 75 Pa.C.S. § 1532(a.1)(2) for his conviction under 75 Pa.C.S. § 3735 (homicide by vehicle while DUI); and a second three-year suspension of his operating privilege, effec-

2. The relevant portion of that statute reads as follows:

(c) **Highest rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c).

3. Homicide by vehicle while driving under the influence (DUI) states:

(a) **Offense defined.**—Any person who unintentionally causes the death of another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 is guilty of a felony of the second degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years. A consecutive three-year term of imprisonment shall be imposed for each victim whose death is the result of the violation of section 3802.

75 Pa.C.S. § 3735(a).

4. The offense of homicide by vehicle is defined as follows:

(a) **Offense.**—Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under the influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S. § 3732(a).

tive February 15, 2016, under 75 Pa.C.S. § 1532(a.1)(1), for the homicide by vehicle conviction under 75 Pa.C.S. § 3732.[5]

On April 17, 2012, Bell timely appealed from the suspension notices, and a hearing was held *de novo* on August 24, 2012, in the Court of Common Pleas of Bucks County. At the hearing, Bell acknowledged committing the aforementioned crimes, and he indicated the criminal sentencing court had merged for sentencing purposes the homicide by vehicle conviction and the homicide by vehicle while DUI conviction, imposing upon him a three-year prison sentence for the latter and assigning no further penalty on the former. While he did not challenge the propriety of the one-year operating privilege suspension for DUI,[6] Bell argued that he should have received only a single, three-year suspension for the criminal convictions of homicide by vehicle and homicide by vehicle while DUI because the sentencing court had merged those two convictions for sentencing purposes.

The trial court agreed, and on September 27, 2012, it issued an order merging for operating privilege suspension purposes the DUI and the homicide by vehicle convictions with the homicide by vehicle while DUI conviction, and it further imposed one, three-year license suspension beginning February 15, 2012.[7] In its opinion of January 14, 2013, the trial court cited to *Commonwealth v. Neupert*, 454 Pa.Super. 62, 684 A.2d 627 (1996), wherein the Superior Court held that homicide by vehicle does not merge with homicide by vehicle

---

**5.** Section 1532(a.1) of the Vehicle Code states:

> **(a.1) Three-year suspension.**—The department shall suspend the operating privilege of any driver for three years upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on a violation of any of the following offenses:
>> (1) Any violation of section 3732 (relating to homicide by vehicle).
>> (2) Any violation of section 3735 (relating to homicide by vehicle while driving under the influence).

75 Pa.C.S. § 1532(a.1).

**6.** The criminal trial court also had sentenced Bell to seventy-two hours to six months in prison for the DUI conviction.

**7.** PennDOT does not contest herein the merger for operating privilege suspension purposes of the DUI with the homicide by vehicle while DUI.

while DUI for sentencing purposes and conceded that it remained the current state of the law in the context of criminal prosecutions; however, it stated the same does not necessarily hold true in the civil context. Nevertheless, after citing to cases involving the merger of criminal sentences and this Court's prior holdings wherein the application of the merger doctrine and the single criminal episode [8] analysis were applied and/or discussed in light of 75 Pa.C.S. § 1532, it found the principles of merger similarly applied to the instant matter. The trial court reasoned that as only one criminal act had been committed and the statutory elements of homicide by vehicle are subsumed in homicide by vehicle while DUI, the evidence simply did not support a conclusion that two crimes had been committed. *Bell v. Commonwealth, Dep't of Transp.*, No. 2034 CD 2012, *slip op.* at 13 (C.P.Bucks, January 14, 2013). The trial court further found that since the Legislature did not include express language in the Vehicle Code directing that the merger doctrine should not apply, the operating privilege suspensions must merge, because "[t]he court cannot add omitted language to the relevant statutes." *Id.* at 17.

PennDOT filed an appeal with the Commonwealth Court wherein it argued that the criminal sentencing court had erred in merging the homicide by vehicle and homicide by vehicle while DUI convictions and that the trial court subsequently had erred in reducing Bell's total suspension time. In a published Opinion decided on July 3, 2013, the Commonwealth Court held the convictions merged for operating privilege suspension purposes. *Bell v. Commonwealth, Dep't of Transp.*, 71 A.3d 1092 (Pa.Cmwlth.2013). In doing so, the Court opined that the analysis this Court set forth in *Drabic v. Commonwealth, Dep't of Transp.*, 588 Pa. 670, 906 A.2d 1153 (2006), should apply to suspensions imposed for moving violations like those set forth in 75 Pa.C.S. §§ 1532(a),[9] (a.1). The

8. This principle is analyzed, *infra.*

9. In its entirety, this Section provides:
   (a) **One-year suspension.**—The department shall suspend the operating privilege of any driver for one year upon receiving a certified

Court related that in a single accident Bell unintentionally crossed over the center line while operating a motor vehicle and struck another vehicle, causing one's death, and this unfortunate circumstance was the basis of both the homicide by vehicle and the homicide by vehicle while DUI convictions. It reasoned that both crimes require the unintentional death of a person caused by an individual operating a vehicle, but homicide by vehicle while DUI requires an additional element of a DUI conviction along with some other violation of the Vehicle Code other than DUI, e.g., failure to yield to a pedestrian, reckless driving, etc., because DUI itself does not cause an accident. *Id.*, 71 A.3d at 1097, n. 9. Stressing that the same facts were the basis of both convictions, the criminal sentencing court correctly had merged these convictions for sentencing purposes, and the operating privilege suspension stemmed directly from the underlying criminal convictions, the Commonwealth Court found the collateral civil consequences also must merge. *Id.*, 71 A.3d at 1097.

PennDOT petitioned this Court for review, and we granted its petition on November 19, 2013, to decide the following questions:

    a.  Do convictions for homicide by vehicle and homicide by vehicle-DUI fail to merge for license suspension pur-

record of the driver's conviction of or an adjudication of delinquency based on any of the following offenses:

(1) Any felony in the commission of which a court determines that a vehicle was essentially involved.

(2) Deleted by 2002, Oct. 4, P.L. 845, No. 123, § 2, effective in 60 days.

(3) Any violation of the following provisions:

Section 3735.1 (relating to aggravated assault by vehicle while driving under the influence).

Section 3742 (relating to accidents involving death or personal injury).

Section 3742.1 (relating to accidents involving death or personal injury while not properly licensed).

Section 7111 (relating to dealing in titles and plates for stolen vehicles).

Section 7121 (relating to false application for certificate of title or registration).

Section 7122 (relating to altered, forged or counterfeit documents and plates).

75 Pa.C.S. § 1532(a).

poses because the statutory elements of the two offenses are mutually exclusive and Section 1532(a.1) of the Vehicle Code explicitly provides a suspension for each offense?

b. Does the difference between criminal and civil proceedings and the lack of an explicit provision on merger in the Vehicle Code support different merger rules for license suspension purposes than for criminal sentencing purposes?

## II. Arguments

PennDOT maintains that in determining Bell's convictions for homicide by vehicle and homicide by vehicle while DUI merged for operating privilege suspension purposes to accord with the merger of his underlying criminal sentences, the Commonwealth Court disregarded *Commonwealth v. Collins*, 564 Pa. 144, 764 A.2d 1056 (2001) wherein this Court held that convictions for those crimes do not merge for criminal sentencing purposes.[10] PennDOT notes that this Court decided *Collins* on January 17, 2001, and over a year later 75 Pa.C.S. § 1532(a)(2), which had provided for a one-year operating privilege suspension for conviction of "[a]ny violation of Section 3735 (relating to homicide by vehicle while driving under the influence)," was deleted and the current Section 1532(a.1) was added and provides for a three-year operating privilege suspension for any violation of Section 3732 and a three-year operating privilege suspension for any violation of Section 3735. PennDOT reasons that when the General Assembly enacted Section 1532(a.1), it presumably had been aware of this Court's holding in *Collins*, and, therefore, it reasonably may be inferred that it would have directed PennDOT to impose only a single operating privilege suspension whenever

10.  As will be discussed in more detail, *infra*, in *Collins*, we affirmed the consecutive sentences the sentencing court had imposed and observed that homicide by vehicle and homicide by vehicle while DUI each required proof of an element not included within the other, namely, that a homicide by vehicle while DUI conviction requires proof of intoxication and a homicide by vehicle conviction requires the establishment of some other violation of the Vehicle Code. *Collins*, 564 Pa. at 149–150, 764 A.2d at 1059.

convictions of those two offenses arise from a single incident, had it intended such a result.

In further support of its contention, PennDOT cites to this Court's decision in *Strawn v. Commonwealth, Dep't of Transp.*, 609 Pa. 482, 17 A.3d 320 (2011) wherein we specifically held that the single criminal episode analysis should be strictly limited to suspensions imposed under 75 Pa.C.S. § 1532(c)[11] for drug-related convictions and stated that moving violations separately listed in Section 1532(b)[12] of the

11. This Section provides:

(c) **Suspension.**—The department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state, or any person 21 years of age or younger upon receiving a certified record of the person's conviction or adjudication of delinquency under 18 Pa.C.S. § 2706 (relating to terroristic threats) committed on any school property, including any public school grounds, during any school-sponsored activity or on any conveyance providing transportation to a school entity or school-sponsored activity.

(1) The period of suspension shall be as follows:

(i) For a first offense, a period of six months from the date of the suspension.

(ii) For a second offense, a period of one year from the date of the suspension.

(iii) For a third and any subsequent offense thereafter, a period of two years from the date of the suspension.

(2) For the purposes of this subsection, the term "conviction" shall include any conviction or adjudication of delinquency for any of the offenses listed in paragraph (1), whether in this Commonwealth or any other Federal or state court.

75 Pa.C.S.A. § 1532(c).

12. This provision reads as follows:

(b) **Suspension.**—

(1) The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on any offense under the following provisions:

Section 3367 (relating to racing on highways). Section 3714(b) (relating to careless driving).

Section 3734 (relating to driving without lights to avoid identification or arrest).

Section 3736 (relating to reckless driving).

Section 3743 (relating to accidents involving damage to attended vehicle or property).

Vehicle Code reflect a legislative intent to impose an operating privilege suspension for each separate violation. PennDOT analogizes Section 1532(a.1) to Section 1532(b), as both list offenses requiring specific terms of suspension, and urges that a logical extension of *Strawn* leads to a conclusion that as a matter of statutory construction, Section 1532(a.1) directs that a separate operating privilege suspension must be imposed for each separate conviction listed thereunder.

PennDOT further argues the doctrine of merger was born in criminal law and the Commonwealth Court's decision fails to recognize the significant differences between criminal and civil proceedings as well as the nonexistence of an explicit provision concerning merger in Section 1532 of the Vehicle Code. PennDOT maintains an operating privilege suspension is distinct from a criminal sentencing proceeding, and no statute directs PennDOT to defer to or abide by the sentencing court's determination, but rather requires it to impose terms of suspension to accord with reports of specific convic-

(2) The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of the driver's conviction of a subsequent offense under section 1501(a) (relating to drivers required to be licensed) if the prior offense occurred within five years of the violation date of the subsequent offense.

(3) The department shall suspend the operating privilege of any driver for 12 months upon receiving a certified record of the driver's conviction of section 3733 (relating to fleeing or attempting to elude police officer) or a substantially similar offense reported to the department under Article III of section 1581 (relating to Driver's License Compact), or an adjudication of delinquency based on section 3733. The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of a consent decree granted under 42 Pa.C.S. Ch. 63 (relating to juvenile matters) based on section 3733.

(4) The department shall suspend the operating privilege of any driver for three months upon receiving a certified record of the driver's conviction of section 1371 (relating to operation following suspension of registration) or 3718 (relating to minor prohibited from operating with any alcohol in system) or an adjudication of delinquency based on section 1371.

(5) The department shall suspend the operating privilege of any driver for three months upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on section 3714(c).

75 Pa.C.S.A. § 1532(b).

tions. *See* 75 Pa.C.S. § 1532. PennDOT cites to Section 9765 of the Sentencing Code [13] which requires that crimes must merge for sentencing purposes when they are greater and lesser-included offenses of each other but is silent as to merger of civil penalties. PennDOT posits that had the Legislature intended it to conduct a merger analysis before imposing suspensions for multiple Vehicle Code violations, a statute equivalent thereto would appear in the Vehicle Code, and a review of the Vehicle Code reveals no statute directing that operating privilege suspensions, which are strictly civil penalties, shall be merged where the criminal convictions which led to them have merged. PennDOT notes that where the Legislature wanted it to conduct a review of convictions under the Vehicle Code before assigning a civil penalty, it explicitly directed it to do so. *See* 75 Pa.C.S. § 1535(b).[14] PennDOT also reminds this Court that 75 Pa.C.S. § 1544(b) provides for an additional period of revocation or suspension when an individual's record shows an additional suspension of the operating privilege assessed during a period of suspension or revocation, and it makes no mention of the necessity of a merger analysis before the existing suspension or revocation is extended. PennDOT also stresses that as it was not a party to the criminal proceeding, it never had an opportunity to dispute the merger of Bell's convictions for sentencing purposes on behalf of the motoring public.

13. In its totality, this statute states that:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

14. Section 1535 entitled "**Schedule of convictions and points**" reads, in relevant part:

(b) **Multiple offenses from same act.**—If a driver is convicted of an offense under subsection 3361 (relating to driving vehicle at safe speed) or 3714 (relating to careless driving), in addition to being convicted of another offense committed at the same time and place, no points shall be assigned for violation of section 3361 or 3714 if points are assigned for the other offense.

75 Pa.C.S. § 1535(b).

Finally, PennDOT urges this Court to disavow the Commonwealth Court's reasoning in its prior decision of *Zimmerman v. Commonwealth, Dep't. of Transp.*, 759 A.2d 953 (2000) (en banc), *appeal denied*, 567 Pa. 753, 788 A.2d 382 (2001)[15] because the difference in the goals of civil and criminal law lead to the conclusion that "there is simply no statutory support for matching sentences merged for criminal purposes with corresponding civil suspensions." PennDOT asserts that due to the lack of clear guidance from this Court, the Commonwealth Court has been applying the rule set forth in *Zimmerman* for the proposition that when convictions merge for sentencing purposes, so will they merge for purposes of PennDOT's imposition of operating privilege suspensions. PennDOT argues *Zimmerman* is particularly troubling in the instant matter as it directly conflicts with this Court's holding in *Collins, supra.*

To the contrary, Bell, acting *pro se*, contends the elements of the lesser offense of homicide by vehicle are subsumed in those required for a conviction of homicide by vehicle while DUI. Bell maintains Section 1532(a.1) of the Vehicle Code requires PennDOT to suspend the operating privileges of a driver for a period of three years for either a violation of Section 3732 or of Section 3735, not for both. Bell opines that while this Court has not previously applied the doctrine of merger or the "single episode rule"[16] to Section (a.1), we have applied the single criminal episode rule to Section (c), and the doctrine of merger to Section (b), and the proper application of either herein would result in our sustaining the decision of the Commonwealth Court. At the same time, Bell argues our prior decision in *Commonwealth v. Collins*, 564 Pa. 144, 764

---

**15.** In this case, the defendant had been convicted of both DUI and Aggravated Assault by Vehicle while DUI following which two operating privilege suspensions were imposed. Upon finding the crimes involved were greater and lesser included offenses, the Commonwealth Court determined that a conviction for DUI and for aggravated assault by vehicle while DUI merged for sentencing purposes and also for purposes of the collateral civil consequences. *Id.*, 759 A.2d at 958.

**16.** Bell is referencing the analysis this Court applied in *Drabic v. Commonwealth, Dep't of Transp.*, 588 Pa. 670, 906 A.2d 1153 (2006), *see infra*.

A.2d 1056 (2001) is inapposite because even though it could have imposed upon Bell consecutive sentences on the two homicide convictions, the sentencing court did not do so, and no appeal was taken therefrom. Bell further urges that the *Collins* decision is not controlling, for it reviewed criminal penalties assessed against a criminal, as opposed to civil sanctions imposed against the operating privileges of a motor vehicle driver, and he asserts that in Section 1532(a) the Legislature did not impose a penalty of suspension for each homicide violation, but rather for each loss of life, as is evident in its use of the term "any" which Bell reads as analogous with "either." Had the Legislature intended a separate penalty for each conviction, so says Bell, it would have specifically indicated as much by inserting the words "and" or "each" in the text of the statute.

## III. Discussion

■■ PennDOT's issues require us to engage in a construction of Section 1532 of the Vehicle Code which presents a pure question of law. As such, our review is plenary and non-deferential. *Commonwealth v. Ramos*, 623 Pa. 420, 83 A.3d 86, 90 (2013).

■ In interpreting a statutory provision, we are guided by the following legal principles:

It is well-settled that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly and that the plain language of the statute is generally the best indicator of such intent. 1 Pa.C.S. § 1921(a), (b). When ascertaining the intent of the General Assembly, there is a presumption that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. § 1922(1). Furthermore, the words of a statute shall be construed according to rules of grammar and according to their common and approved usage. 1 Pa.C.S. § 1903(a). Every statute shall be construed, if possible, to give effect to all its provisions. 1 Pa.C.S. § 1921(a). We will only look beyond the plain meaning of the statute where the words of

the statute are unclear or ambiguous. 1 Pa.C.S. § 1921(c); *see also Commonwealth v. Diodoro*, 601 Pa. 6, 970 A.2d 1100, 1106 (2009). Finally, we also presume that when enacting legislation, the General Assembly is familiar with extant law. *White Deer Twp. v. Napp*, 603 Pa. 562, 985 A.2d 745, 762 (2009).

*Id.* 83 A.3d at 90–91 (citation omitted).

While PennDOT's first issue challenging Bell's operating privilege suspension under 75 Pa.C.S. § 1532(a.1) presents an issue of first impression for this Court, we have addressed the legality of multiple operating privilege suspensions issued pursuant to Section 1532 in three prior decisions: *Freundt v. Commonwealth, Dep't of Transp.*, 584 Pa. 283, 883 A.2d 503 (2005); *Drabic, supra;* and *Strawn, supra.*

In *Freundt*, the defendant misappropriated drugs from her employer for her personal use while she was employed as a pharmacist. Following her guilty plea to sixteen counts of obtaining a controlled substance by misappropriation, fraud, forgery, deception or subterfuge, 35 P.S. § 780–113(a)(12), PennDOT issued sixteen, separate suspensions of her operating privilege pursuant to 75 Pa.C.S.A. 1532(c). Freundt challenged fifteen of those suspensions, claiming that only one suspension was warranted due to the fact that all of her violations had arisen from a single criminal episode. The trial court determined that the violations comprised multiple criminal episodes which supported the issuance of multiple license suspensions. The Commonwealth Court reversed, finding that only separate and distinct criminal episodes supported separate suspensions and the record did not reflect whether the defendant had misappropriated the drugs at one time.

PennDOT petitioned this Court for review, and in a 4–3 decision, we held that only a single suspension is appropriate where multiple violations arise from a single criminal episode for purposes of driver's license suspensions issued pursuant to 75 Pa.C.S. § 1532(c). *Id.* at 290, 883 A.2d at 507. In doing so, we opined that Section 1532(c)'s provision that PennDOT shall suspend an individual's operating privileges upon his or her

"conviction of any offense" means a suspension should issue "not merely for each conviction for every violation of the Crimes Code, but for each conviction stemming from a criminal episode," because the Legislature's use of the phrase "conviction of any offense" rather than simply the term "conviction" evinces it did not intend to impose a separate suspension for each conviction. *Id.* at 290, 883 A.2d at 506–507.

Justice Saylor filed a Dissenting Opinion, as did Justice Eakin, the latter of which Justice Newman joined. In his dissent, Justice Saylor stated he would have upheld the multiple suspensions in that he deemed the term "offense" meant a violation of the law, or a crime, and, therefore, neither the text of Section 1532(c) itself nor its context within the Vehicle Code supported construing the term "offense" or the phrase "conviction of any offense" to mean a "single criminal episode" as "multiple offenses for crimes may arise out of any particular single criminal episode." *Id.* at 292, 883 A.2d at 508 (Saylor, J., dissenting) *citing* BLACKS LAW DICTIONARY (17th ed. 1999); *accord* 18 Pa.C.S. § 106; 18 Pa.C.S. § 110(1)(ii).

Justice Eakin dissented on two points. First, he believed the Majority's interpretation of "offense" for purposes of Section 1532(c) as meaning a single criminal episode was inconsistent with the plain language and aim of that provision which nowhere contains the word "episode." *Id.* at 294, 883 A.2d at 509 (Eakin, J., dissenting). He also maintained that even if the term "offense" were to be construed in such a manner, PennDOT should not bear the burden of establishing the lack of single criminal episode. Burden of proof aside, Justice Eakin would have held that a separate suspension under Section 1532(c) is properly imposed for each count on which a licensee had been convicted, notwithstanding whether the counts occurred in a single criminal episode. He observed that a single criminal episode analysis is appropriate for criminal prosecutions, which necessarily implicate double jeopardy and other policy considerations, but is unnecessary in license suspension cases wherein a licensee already had been charged and convicted of the underlying offenses and the license suspension is simply a civil consequence of that crimi-

nal prosecution. *Id.* at 295–296, 883 A.2d at 510 (Eakin, J., dissenting) (citations omitted).

One year after we decided *Freundt,* we granted review in *Drabic, supra,* to consider whether collateral civil consequences of criminal acts like suspensions of one's operating privilege should be merged to accord with the merger of the underlying criminal convictions. *Drabic,* 588 Pa. at 672, 906 A.2d at 1154. Drabic, while driving drunk, was involved in an accident and a passenger in his automobile was killed. He pled guilty to fourteen offenses, including homicide by vehicle while DUI. PennDOT issued a series of consecutive operating privilege suspensions on each conviction pursuant to 75 Pa. C.S. § 1532(a) and (a.1), and Drabic appealed twelve of them. Though he conceded that the suspension for homicide by vehicle DUI was proper, Drabic maintained the remaining operating privilege suspensions should have merged into that greater offense. The trial court granted his appeal in part and merged his suspensions stemming from DUI and aggravated assault by vehicle while DUI into his suspension for homicide by vehicle DUI and also merged his reckless driving suspension with his homicide by vehicle suspension. PennDOT appealed, and the Commonwealth Court affirmed and reversed in part. Significantly, it affirmed the trial court's merger analysis, relying upon its prior decision in *Zimmerman, supra,* and once again held that collateral civil consequences merge where the sentences for the underlying criminal convictions merged.

In another 4–3 decision, after finding it unnecessary to employ a merger analysis, this Court concluded that Sections (a) and (a.1) contained the language "conviction for any offense" which was similar to that contained in Section 1532(c); therefore, we found it fitting to employ the single criminal episode analysis of *Freundt* and reaffirmed that "only a single suspension can be imposed based upon a single criminal episode." *Drabic,* 588 Pa. at 675, 906 A.2d at 1156. Notwithstanding, in *dicta* we briefly referenced the concept of double jeopardy and stated that while the merger doctrine historically had been applied only in the criminal context, it had been

utilized in the related context of administrative consequences for more than a decade. *Id.* at 680, 906 A.2d at 1159. We further proclaimed that based principally on our determination that "the Legislature articulated no proscription against collateral civil consequences merging along with the underlying criminal convictions," the Commonwealth Court's conclusion that the operating privilege suspensions merged should be upheld. *Id.*

Justice Newman penned a Dissenting Opinion which Justices Eakin and Saylor joined. Justice Newman disagreed with the Majority's reasoning that an application of the merger doctrine was applicable in a civil matter where double jeopardy concerns are not implicated absent an express directive by the Legislature. *Id.* at 687–688, 906 A.2d at 1163 (Newman, J., dissenting). With regard to the application of the merger doctrine in matters involving a civil consequence of a criminal act, Justice Newman opined:

> The omission of a negative, that is, not including language that merger does not apply, is not indicative of a desire on the part of the General Assembly for merger to apply. An action, in general, should be mandated and not implied when conducting a plain-language reading. The language differentiates the two acts and applies two different suspensions with no mention of merging the suspensions. Accordingly, the plain language of the statute weighs in favor of imposing individual suspensions for Aggravated Assault while DUI and Homicide by Vehicle while DUI.

*Id.* at 682, 906 A.2d at 1160 (Newman, J., dissenting) (footnote omitted). Justice Newman stressed the Legislature's silence in 75 Pa.C.S. § 1532 regarding the merger doctrine indicated it was inapplicable therein. *Id.* at 682, 906 A.2d at 1160. Justice Newman also reiterated her disagreement with the *Freundt* decision and the Majority's reliance upon it, and she joined Justice Saylor's conclusion that *Freundt* was distinguishable.

Justice Newman also addressed directly the issue of merger after which she vehemently concluded the merger doctrine is inapplicable in driver's license suspension cases. First, Jus-

tice Newman discussed the nature of a driver's license suspension as a collateral civil consequence, not a criminal penalty, which is imposed administratively by PennDOT pursuant to the Vehicle Code, not the Crimes Code. *Id.* at 686, 906 A.2d at 1162 (Newman J., dissenting) (citation omitted). Justice Newman next examined the reasons behind the Fifth Amendment guarantee against double jeopardy, enforceable against the states through the Fourteenth Amendment, as consisting of three, separate constitutional protections as set forth by Supreme Court of the United States to "protect[ ] against a second prosecution for the same offense after acquittal ..., protect[ ] against a second prosecution for the same offense after conviction ... [and] protect[ ] against multiple punishments for the same offense." *Id.*, at 686, 906 A.2d at 1163 (Newman, J., dissenting) *quoting North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by, Alabama v. Smith,* 490 U.S. 794, 795, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Justice Newman opined that the first two concerns expressed in *Pearce* are not present in driver's license suspension proceedings, where prosecutions are not in issue, and she reasoned that multiple punishments are also not a concern in such matters because license suspensions are remedial in nature. She further argued the General Assembly's failure to assert that the merger doctrine is inapplicable in the Vehicle Code was not indicative of its intent that it be applied. To the contrary, Justice Newman reasoned that suspensions for DUI violations arise out of the fact that a drunk driver poses a great threat to the general public and must be removed from the road to protect it, and "[s]uch reasoning comes from the viewpoint of remediation and not from one of punishment." *Id.* at 688, 906 A.2d at 1164 (Newman, J., dissenting). In addition, she challenged the Commonwealth Court's analysis in *Zimmerman,* noting that the cases to which it had cited therein were all distinguishable in that they "involved the criminal aspect of the convictions rather than the civil consequences that follow." *Id.* at 684–85, 906 A.2d at 1161–1162 (Newman, J., dissenting).

In Justice Saylor's dissenting view, *Freundt* was not controlling as it had been decided in a different context and involved a separate provision of Section 1532. *Id.* at 689, 906 A.2d at 1164 (Saylor, J., dissenting). Justice Saylor posited that the Legislature was more explicit in Sections (a) and (a.1) than in Section (c), because (a) and (a.1) delineated specific violations to which an operating privilege suspension was to attach. *Id.* at 689–690, 906 A.2d at 1164 (Saylor, J., dissenting). Moreover, Justice Saylor noted Sections (a) and (a.1) stated that "any violation" of the listed offenses would result in a suspension; therefore, "*Freundt's* rationale that the Legislature was not addressing specific violations because it utilized different terminology cannot stand in the context of a statute that explicitly targets 'violations.'" *Id.* at 689, 906 A.2d at 1165 (Saylor, J., dissenting). Applying his logic to the matter at hand, Justice Saylor concluded Drabic's suspensions should not have merged because he committed multiple violations of the offenses listed in Sections 1532(a) and (a.1).

Most recently, in *Strawn, supra,* this Court addressed the question of whether the imposition of multiple operating privilege suspensions under 75 Pa.C.S.A. § 1532(b) for multiple violations of the Vehicle Code would be appropriate when those violations occurred during a single criminal episode. Therein, Strawn had been convicted of driving under the influence (DUI), failing to stop after an accident involving damage to attended vehicle or property, reckless driving, and fleeing a police officer.[17] As a result, his operating privilege was suspended for an aggregate of three years under Section 1532(b). Strawn did not challenge his one year suspension for DUI, but he did appeal the others. The trial court upheld the multiple suspensions, and the Commonwealth Court affirmed.

After discussing the aforementioned caselaw, this Court acknowledged that a challenge under Section 1532(b) presented an issue of first impression. *Id.* at 485, 17 A.3d at 322. We acknowledged that the Majority in *Drabic* had discussed *Freundt,* but we found that "the single criminal episode analysis was a digression and not germane to the disposition of the

17. 75 Pa.C.S.A. §§ 3802(b), 3743(a), 3736(a), and 3733(a), respectively.

principal question before the *Drabic* court." *Id.* at 495–96, 17 A.3d at 329. We discussed that one of the Legislature's primary goals in suspending a driver's operating privilege is to protect the public from those who do not drive safely and in accordance with the law. *Id.,* at 492–93, 17 A.3d at 327. We also explained one convicted of multiple crimes is not entitled to a "volume discount" when PennDOT imposes related operating privilege suspensions. *Id.,* at 495–96, 17 A.3d at 328. As a result, we rejected *Drabic's* extension of the single criminal episode analysis beyond 75 Pa.C.S.A. § 1532(c) and in doing so reasoned that provision involves offenses under the Controlled Substances Act, rather than the Vehicle Code, and an application of the single criminal episode analysis to moving violations would do nothing to discourage the commission of multiple traffic offenses. *Id.*

Significantly, we declined to address directly the question raised by both parties of whether the doctrine of merger even applied in the civil context, after noting that a merger analysis was not dispositive because Strawn had not challenged the Commonwealth Court's conclusion that his suspensions were not subject to merger as none of his offenses constituted lesser included offenses. *Id.* at 496, 17 A.3d at 329 n. 10. Nevertheless, we found significant the fact that the language in Section 1532(b) imposed different lengths of suspension time depending upon which Vehicle Code provision the driver had violated. We reasoned it would strain the statute's plain meaning to conclude only one suspension is appropriate in light of such language, especially since the length of the single suspension would be unclear. *Id.* at 495, 17 A.3d at 328.

In his Concurring Opinion, Justice Saylor stated that though the Majority had limited the applicability of the single criminal episode analysis set forth in *Freundt* to Section 1532(c), he remained concerned that *Freundt's* continued longevity means this Court will deem the Legislature meant "offense" with regard to 75 Pa.C.S. § 1532(b)(1), but something totally different, such as a criminal episode or some larger collection of offenses, when it included the term in 75 Pa.C.S. § 1532(c), though they are "substantively identical

passages." *Id.* at 498, 17 A.3d at 329–330 (Saylor, J., dissenting). Citing to his dissent in *Freundt,* Justice Saylor expressed that he "continued to find such a reading of these parallel, sequential provisions to be untenable as a matter of statutory interpretation." *Id.* Justice Saylor regarded both *Freundt* and *Drabic* as "candidates for overruling" and opined that these cases "represented material departures from conventional statutory interpretation [and] also maintain[ed] the concern that these types of deviations from a statute's plain terms are deleterious, in that they substantially widen the pathways for differences regarding otherwise straightforward language used by the Legislature, thus unduly complicating both the processes of legislative drafting and the ensuing judicial review." *Id.* at 499, 17 A.3d at 330.

Turning to the matter *sub judice,* we first note that the Commonwealth Court clearly erred when it found Bell's homicide by vehicle and homicide by vehicle while DUI convictions properly merged for criminal sentencing purposes, for in *Commonwealth v. Collins,* 564 Pa. 144, 764 A.2d 1056 (2001), this Court specifically held to the contrary. In doing so, we reasoned the merger doctrine is a rule of statutory construction which mandates a statutory analysis as to whether the Legislature intended for offenses to merge for sentencing purposes. *Id.* at 147, 764 A.2d at 1057. We ultimately found that notwithstanding whether one death resulted from a defendant's criminal conduct, the Legislature had crafted the statutory elements of the two offenses as mutually exclusive with homicide by vehicle requiring a non-DUI Vehicle Code conviction and homicide by vehicle while DUI requiring a DUI conviction. To illustrate, we reasoned that a defendant's act of driving while intoxicated, which resulted in a death, satisfies the elements of homicide by vehicle while DUI, and his non-DUI Vehicle Code violation, which also resulted in a death, satisfies the elements of homicide by vehicle, and "[t]he fact that the death of the same individual supported elements in both offenses does not warrant the merging of the sentences imposed when other mutually exclusive elements of the crimes remain." *Id.* at 149–51, 764 A.2d at 1059. We further recog-

nized that while *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593 (Pa.1998) permitted an analysis of "the elements as charged in the circumstances of a case," [ ] "it does not permit [this Court] to view the circumstances so broadly that we redefine the elements of the crime." *Id. See also Commonwealth v. Jones*, 590 Pa. 356, 364–65, 912 A.2d 815, 820 (2006) (plurality) (reiterating these principles in finding the crimes of burglary and criminal trespass would merge for sentencing purposes).

Moreover, in a footnote to its opinion herein, the Commonwealth Court declared that it would not entertain PennDOT's request for it to overrule its decision reached in *Zimmerman, supra*, as the Court saw "nothing to suggest that the General Assembly intended for PennDOT to impose separate civil penalties for each violation of the Code that can be merged with another offense and is punishable by a single sentence." *Bell v. Commonwealth, Dep't of Transp.*, 71 A.3d 1092, 1097 n. 10 (Pa.Cmwlth.2013); however, in *Tyler v. Commonwealth, Dep't of Transp.*, 25 A.3d 1312 (Pa.Cmwlth.2011), upon finding this Court's recent holding in *Strawn* was controlling, the Commonwealth Court held that a driver was not entitled to a merger of the five, consecutive, single-year driver's license suspensions which had been imposed upon him following his guilty plea to five counts of aggravated assault by vehicle while DUI where five victims had been injured as a result of a single criminal episode. The driver had argued his five convictions did not arise from five separate offenses because they occurred when he struck a single car carrying five passengers. *Id.*, 25 A.3d at 1314. Applying *Strawn*, the Commonwealth Court explained that under *Zimmerman*, a merger of convictions will also merge the corresponding civil consequence, but it also stated that "a merger of convictions for purposes of calculating a driver's license suspension is not appropriate where the licensee *has committed offenses with distinct elements or* committed offenses arising from separate acts." *Id.*, 25 A.3d at 1317 (emphasis added). In light of this Court's prior decision in *Collins* that homicide by vehicle and homicide by vehicle while DUI contain distinct elements and, thus, do

not merge for criminal sentencing purposes, the Commonwealth Court erred in holding herein that the resulting suspensions must merge to accord with the Bell's criminal sentence.

Even had these crimes properly merged for sentencing purposes, we must next consider PennDOT's second contention that the difference between criminal and civil proceedings and the lack of an explicit provision requiring an application of the merger doctrine to operating privilege suspensions in the Vehicle Code dictate that the criminal doctrine of merger is inapposite in the administrative suspension context. This Court previously has stated that the doctrine of merger "is a rule of statutory construction designed to determine whether the legislature intended for the *punishment* of one offense to encompass that for another offense arising from the same criminal act or transaction." *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 21 (1994) (emphasis added). In contrast, we also have held that "[a] consequence is civil in nature where, 'imposition has been vested in an administrative agency over which the criminal judge had no control and for which he had no responsibility.'" *Commonwealth v. Duffey*, 536 Pa. 436, 442, 639 A.2d 1174, 1177 (1994), *cert. denied*, 513 U.S. 884, 115 S.Ct. 223, 130 L.Ed.2d 149 (1994) (citation omitted). "The mandatory suspension of a driver's license upon conviction for DUI is a collateral civil penalty administratively imposed by [PennDOT] pursuant to the mandates of the [ ] Vehicle Code *not* the Crimes Code. Thus, the mandatory suspension is not a direct criminal penalty, but rather, is a civil sanction wholly unrelated to Petitioner's appeal of the criminal conviction to the Superior Court." *Commonwealth v. Wolf*, 534 Pa. 283, 290, 632 A.2d 864, 867 (1993) (citations omitted) (emphasis in original). As operating privilege suspensions are collateral civil consequences, not criminal penalties, they do not violate a motorist's equal protection or due process rights, nor does a defendant in a criminal case need to be informed of the collateral consequence for his criminal conduct, as it does not constitute a portion of his or her punishment. *Duffey*, at 440, 639 A.2d at 1176.

Against this backdrop, we find that both the plain terms of 75 Pa.C.S. §§ 1532(a), (a.1) and a logical extension of our holding in *Strawn* lead to a conclusion that each violation of any offense listed therein will require a separate operating privilege suspension. Conventional statutory interpretation requires us to read a statute's plain terms, for it is therein that we may discern the best evidence of legislative intent. Sections 1532(a) and (a.1) assign civil consequences for separately numbered criminal acts with no mention of merging those suspensions. Specifically, Section 1532(a) provides PennDOT shall impose a one-year suspension of one's operating privilege upon receipt of a certified record of a conviction based upon a violation of any listed offenses. 75 Pa.C.S. § 1532(a). Similarly, Section 1532(a.1) mandates that Penn-DOT shall suspend a driver's operating privilege for three years when it receives a certified record of his or her conviction based upon a violation of any of two separately designated offenses: (1) 3732 (relating to homicide by vehicle) and (2) 3735 (relating to homicide by vehicle while DUI). 75 Pa.C.S. § 1532(a.1). Accordingly, the plain language of these statutory provisions in explicitly targeting "a violation of any of the following offenses" reveals a legislative intent that an individual's operating privilege shall be suspended when he or she is convicted of one, more than one, or all of the individually listed and enumerated offenses; a suspension does not issue upon receipt of the criminal sentencing report.

In addition, in *Strawn* we rejected the application of the single criminal episode analysis beyond Section 1532(c) and stressed the Legislature used the language of "any offense" in Section 1532(b) as "indicative of its intent to impose a suspension for each separate violation." We also noted Sections 1532(a) and (a.1) which were at issue in *Drabic*, "possessed similar characteristics to Section 1532(b)." *Strawn*, 17 A.3d at 328 n. 9. The Commonwealth Court herein acknowledged that *Strawn* overruled *Drabic* in part, though it erroneously extrapolated from our holding therein that "the merger analysis should be applied to suspensions imposed for moving violations, such as those under sections 1532(a) and (a.1)." *Bell v.*

*Commonwealth, Dep't of Transp.,* 71 A.3d 1092, 1095 (Pa. Cmwlth.2013). However, in *Strawn* we stated that *Drabic's* merger analysis was inapplicable because that specific issue was not before us, but we did clarify that as a matter of statutory construction and sound public policy the single criminal episode analysis is appropriate only where the violation causing the suspension arises from a drug-related conviction under Section (c).[18] The various subsections of 1532(a), (a.1) and (b) concern suspensions arising from violations of the Vehicle Code, not violations of the Controlled Substances Act.

Indeed, "[i]f the legislature had desired for merger to apply, it would have been a simple matter to include, in language after the current Section 1532(a.1), a statement that a three-year suspension for homicide by vehicle while DUI includes the suspension [of] all lesser include[d] offenses (e.g., DUI and Aggravated Assault while DUI)." *Drabic,* 588 Pa. at 682, 906 A.2d at 1160, n. 1 (Newman, J., dissenting). To the contrary, in Section (a.1) the Legislature assigned a separate numeric designation for any violation relating to homicide by vehicle and any violation relating to homicide by vehicle while DUI which prolongs the operating privilege suspension for those who are convicted of both offenses. To read the application of the merger doctrine therein would be to disregard the letter of the statute under the pretext of pursuing its spirit. *See* 1 Pa.C.S. § 1921(b).

## IV. Conclusion

Having concluded that the plain language of 75 Pa.C.S. §§ 1532(a), (a.1) does not support an application of the criminal merger doctrine and a logical extension of our decision in *Strawn* also leads to such a result, we hold that multiple operating privilege suspensions of listed violations under 75 Pa.C.S. §§ 1532(a), (a.1) of the Vehicle Code are properly imposed following a conviction of each enumerated offense

18. We do not re-examine the single criminal episode analysis as it has been employed in the context of Section 1532(c), because DOT has not questioned herein the propriety of its application to operating privilege suspensions that arise from convictions under The Controlled Substance, Drug, Device and Cosmetic Act.

listed therein, whether or not a listed offense may have merged for criminal sentencing purposes. To the extent prior decisions of the Commonwealth Court are inconsistent with this decision, they are overruled. Accordingly, we reverse the decision of the Commonwealth Court and remand to that Court for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN and McCAFFERY join the opinion.

Justice TODD files a concurring opinion in which Justice BAER joins.

Justice TODD, concurring.

I agree with the Majority Opinion—insofar as it holds that the crimes of homicide by vehicle and homicide by vehicle while driving under the influence do not merge for the purpose of imposing criminal sentences, *see Commonwealth v. Collins*, 564 Pa. 144, 764 A.2d 1056, 1057–59 (2001)—thus, I agree with its holding that the Commonwealth Court erred in concluding these offenses merge for purposes of imposing related drivers' license suspensions. However, given that the majority's holding in this regard requires reversal of the Commonwealth Court's order and fully disposes of the instant matter, its subsequent discussion of the proper interpretation of 75 Pa.C.S.A. § 1532 and, more broadly, the application of merger principles to drivers' license suspensions and other civil sanctions is non-precedential *obiter dictum. See generally Rendell v. State Ethics Com'n*, 603 Pa. 292, 983 A.2d 708, 714 (2009) (noting statements not necessary to a court's decision constitute nonbinding *obiter dictum*); *Howard ex rel. Estate of Ravert v. A.W. Chesterton Co.*, 78 A.3d 605, 610–11 (Pa.2013) (Todd, J., concurring) (cautioning against the broad enunciation of legal principles unnecessary to the case at bar); Cass R. Sunstein, *The Supreme Court, 1995 Term—Foreword: Leaving Things Undecided*, 110 Harv. L.Rev. 4 (1996) (extol-

ling the virtues of "decisional minimalism"). Accordingly, I concur only in the result.

Justice BAER joins this opinion.