**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3047

_____

MAWUYRAYRASSUNA EMMANUEL NOVIHO,
                                                    Appellant

v.

LANCASTER COUNTY OF PENNSYLVANIA;
SCOTT F. MARTIN; TODD E. BROWN; CHRISTOPHER DISSINGER

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5:15-cv-03151)
District Judge: Honorable Jeffrey L. Schmehl

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 10, 2017

Before:  MCKEE, RENDELL, and FUENTES, *Circuit Judges*

(Opinion filed: March 20, 2017)
_____

OPINION[*]
_____

FUENTES, *Circuit Judge*.

        Plaintiff Mawuyrayrassuna Noviho seeks review of an order dismissing his civil-

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

rights complaint.  We will affirm.

I.

In November 2012, a Volkswagen Passat driven by non-party Katie West slammed into the rear of a northbound Freightliner truck in Lancaster County, Pennsylvania.  The Freightliner had just reentered Pennsylvania State Route 222 from the shoulder, and was traveling well under the posted speed limit.  West and her young daughter survived the collision; tragically, her husband and son did not.

After a seven-month investigation into the crash, officials obtained a warrant for the arrest of the driver of the Freightliner: 22-year-old Noviho, an immigrant from Togo and resident of Newport News, Virginia.  Noviho faced three third-degree Pennsylvania felony charges—two of homicide by vehicle and one of aggravated assault by vehicle[1]— and four traffic violations, which in Pennsylvania are graded as summary offenses below the misdemeanor level and are punishable with minor fines.[2]

Noviho's trial was held in early 2015.  The felonies were tried to a jury; Noviho was acquitted on all three.  Following the jury verdict and a brief recess, the Common Pleas trial judge held a summary bench proceeding in which he found Noviho guilty of three of the traffic violations: driving too slowly for conditions, failing to use his hazard

---

[1] *See* 18 Pa. Cons. Stat. §§ 3732(a), 3732.1(a).

[2] *See* 18 Pa. Cons. Stat. § 106(c) (describing summary offenses), 75 Pa. Cons. Stat. § 6502 (establishing that Title 75 Vehicle Code violations are summary offenses carrying $25 fines unless specified otherwise).  Five traffic offenses were charged originally, but one was withdrawn by the Commonwealth.

lamps while stopped or while unable to maintain appropriate speed, and moving his vehicle unsafely.[3] Noviho was fined the statutory maximum of $75, plus costs. He challenged his traffic convictions on appeal without success.[4]

While those appeals were pending, Noviho filed this federal civil-rights lawsuit. He raised 42 U.S.C. § 1983 Fourth Amendment claims of false imprisonment/arrest, malicious prosecution, and conspiracy, and lodged a derivative *Monell* claim against Lancaster County.

In his complaint, Noviho cast the investigation, arrest, and prosecution as an attempt to deflect culpability from West, who allegedly was driving under the influence of drugs and far in excess of the posted speed limit at the time of the crash. Noviho claimed that West's brother, defendant Scott Martin—then Lancaster County Commissioner, now a Pennsylvania State Senator—used his political connections to shift the focus of the investigation away from his sister and towards Noviho, a politically powerless outsider and easy scapegoat for the accident. According to Noviho, Martin did so not only to protect his sister, but also to ensure the continued value of a civil action the family planned to file.[5] Allegedly aiding Martin in this plan were defendants Christopher

---

[3] *See* 75 Pa. Cons. Stat. §§ 3333, 3364(a), 4305(a), (b)(1). Noviho was acquitted of driving after dark without headlights. *See* 75 Pa. Cons. Stat. § 4302(a)(1).

[4] *See Commonwealth v. Noviho*, No. 394 MDA 2015, 2016 WL 889776 (Pa. Super. Ct. Feb. 17, 2016) (unpublished disposition reprinting trial court's Pa. R. App. P. 1925(a) opinion), *appeal denied*, No. 374 MAL 2016, 2016 WL 5814739 (Pa. Oct. 5, 2016).

[5] We assume that Noviho refers to *West v. C.R. England, Inc.*, E.D. Pa. Civ. No. 5:14-cv-04872, which was filed in July 2014 (about a year after the crash, but before Noviho's

3

Dissinger, the lead detective on the crash investigation, and Todd Brown, the Lancaster County Assistant District Attorney who supervised and directed the investigation.

The District Court granted the defendants' Fed. R. Civ. P. 12(b)(6) motions to dismiss Noviho's complaint. With regard to the false imprisonment/arrest claims, the Court reasoned that Noviho's convictions on the summary traffic offenses indicated sufficient probable cause to justify an arrest, regardless of whether the summary offenses were "arrestable" under Pennsylvania law. With regard to the malicious prosecution claims, the Court relied on our *en banc* decision in *Kossler v. Crisanti*[6] to find that Noviho's conviction on the summary offenses precluded the required "favorable termination" of his underlying state-court proceedings. Finally, the Court dismissed the remaining conspiracy and *Monell* claims due to the failure of the underlying substantive claims. Noviho appealed.

---

trial) and settled in late 2016. The parties do not suggest that this parallel lawsuit had any preclusionary effect on the one now at bar, so we note it only for the sake of thoroughness.

[6] 564 F.3d 181 (3d Cir. 2009).

a) <u>Malicious Prosecution</u>

Turning first to the malicious prosecution claims, we agree with the District Court that *Kossler* is dispositive. A plaintiff claiming malicious prosecution must show that the underlying criminal proceeding ended in a "favorable termination."[8] In *Kossler*, we held that a mixed verdict, such as an "acquittal [] accompanied by a contemporaneous conviction at the same proceeding," can be a favorable termination "[w]hen the circumstances—both the offenses as stated in the statute and the underlying facts of the case—indicate that the judgment as a whole . . . reflect[s] the plaintiff's innocence."[9] Pennsylvania defines aggravated assault by vehicle and homicide by vehicle, the felonies charged here, as a death or serious bodily injury resulting from a recklessness or gross negligence "while [a person is] engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to

---

[7] We have jurisdiction under 28 U.S.C. § 1291 and conduct plenary review, accepting as true all well-pleaded allegations in the complaint and drawing all reasonable inferences in Noviho's favor. *See Lora-Pena v. Fed. Bureau of Investigation*, 529 F.3d 503, 505 (3d Cir. 2008) (per curiam). While the complaint itself remains the primary focus on review of a 12(b)(6) order of dismissal, we may also consider attachments to the complaint, matters of public record, and certain indisputably authentic documents provided in support of a motion to dismiss. *See Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016); *see also Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993) (treating certain documents submitted in opposition to motion to dismiss as "part of the pleadings").

[8] *See Kossler*, 564 F.3d at 186.

[9] *Id.* at 188.

the regulation of traffic."[10] In other words, the felony charges were premised on, and indeed required, an underlying violation of Pennsylvania's vehicle or traffic laws.[11] In the context of the "entire criminal proceeding,"[12] the core unlawful conduct was Noviho's noncompliance with the Pennsylvania Vehicle Code; the felony charges added *mens rea*, harm, and causality elements. Thus, while the jury acquitted Noviho of the felonies, his conviction on the underlying traffic offenses means that he cannot be considered innocent for the purposes of favorable termination.

As he did before the District Court, Noviho presses a novel argument in an attempt to distinguish *Kossler*: as favorable termination requires that the "proceeding" end in his favor, he contends that the felonies and summary offenses were adjudicated in two separate proceedings, because the trial judge alone sat on the latter while the jury decided the former. Noviho freely admits that he can find no case law in favor of this argument, but notes that no case law forecloses it either.

However, as the District Court observed, Pennsylvania law does not support this bifurcation of its court "proceedings"; in fact, it does the opposite. Pennsylvania's Rules of Criminal Procedure distinguish between "summary cases," where the only offenses charged are summary offenses, and "court cases," in which at least one of the offenses

---

[10] 75 Pa. Cons. Stat. §§ 3732(a), 3732.1(a).

[11] *See Bell v. Commonwealth*, 96 A.3d 1005, 1017–18 (Pa. 2014) ("[H]omicide by vehicle requir[es] a non-DUI Vehicle Code conviction . . . .").

[12] *Kossler*, 564 F.3d at 188.

6

charged is a misdemeanor or greater.[13] The commentary to Pa. R. Crim. P. 400 clarifies that "any summary offenses" connected to a misdemeanor offense or greater "must be charged in the same complaint as the higher offenses and must be disposed of as part of the court case."[14] As required by the relevant Rules, the summary offenses were so charged. That the state trial judge withheld the summary offenses from the jury does not militate against viewing the case as one single "court case"—a single proceeding—that was disposed of in part by two different fact finders.[15]

In sum, under *Kossler,* the District Court correctly dismissed Noviho's malicious prosecution claims.

b) <u>False Imprisonment/Arrest</u>

Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest.[16] The District Court determined that probable cause existed to arrest Noviho on the summary offenses, and that the "arrestability" of the offenses under state law was not dispositive to a federal constitutional inquiry. Because the arrest was supported at least in part by probable cause, the District Court reasoned that Noviho's false imprisonment and arrest claims

---

[13] *See* Pa. R. Crim. P. 103.

[14] Pa. R. Crim. P. 400 cmt. 1.

[15] *See also Noviho*, 2016 WL 889776, at *3 (collecting Pennsylvania cases in which a defendant was "placed in the unusual situation of having a trial before two separate and distinct fact finders[:] a jury on the felony charge and a trial judge on the summary charge").

[16] *See Dempsey v. Bucknell Univ.*, 834 F.3d 457, 466–67 (3d Cir. 2016).

7

failed. Although the particular facts of this case are unusual, we ultimately agree with the District Court that Noviho fails to state a Fourth Amendment claim upon which relief could be granted.

As an initial matter, Noviho critiques the District Court's failure to examine and reconstitute the probable cause affidavit presented by the defendants to obtain the arrest warrant.[17] But while referenced in the complaint, the affidavit was not attached to it and was not otherwise introduced over the course of motions practice; the District Court could not have reconstituted the document without having access to it. Moreover, our cases directing the District Court to reconstitute the probable cause affidavit generally arise on summary judgment, not dismissal.[18] In any event, the central inquiry that was properly addressed by the District Court is not whether the warrant was defective, but whether Noviho successfully pleaded a violation of his Fourth Amendment right to be free of an unreasonable seizure conducted without probable cause.[19]

It seems clear that there was probable cause to arrest on the summary offenses. Even construing all inferences in Noviho's favor and assuming that the summary offenses were not at all relevant to the magisterial district judge's determination of probable

---

[17] *See id.* at 470 ("Where there are improperly omitted or included facts, we have previously instructed district courts to perform literal, word-by-word reconstructions of challenged affidavits.").

[18] *See, e.g.*, *Goodwin v. Conway*, 836 F.3d 321, 324 (3d Cir. 2016); *Dempsey*, 834 F.3d at 462; *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000).

[19] *See Graves v. Mahoning Cty.*, 821 F.3d 772, 775–76 (6th Cir. 2016) (explaining that an invalid arrest warrant does not preclude a reasonable arrest).

8

cause—unlikely, given as each of the felonies required an underlying traffic violation—Noviho does not contest that the police had reason to suspect, by the time he was arrested, that he was operating his truck below the posted speed limit and that he disengaged his hazard lamps once he merged back onto the roadway. These facts, themselves pleaded in the complaint, would be sufficient to suggest a "fair probability" that Noviho had violated the traffic laws; probable cause does not require the officers to resolve all conflicting evidence.[20] Further, we recently reaffirmed that "false arrest or imprisonment claims will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee."[21] Noviho's attempt to distinguish this line of precedent is unavailing.

Noviho's argument against the presence of probable cause is that the summary traffic offenses are not "arrestable" under Pennsylvania law, with or without a warrant. Thus, he contends, the analysis should be confined to whether the *felony* counts were unsupported by probable cause.

However, that traffic offenses are not themselves "arrestable" under Pennsylvania law does not materially change the analysis. First, it is more accurate to say that the Pennsylvania traffic offenses alone would not have supported the arrest *in this case*. In other circumstances, officers are authorized under state law to arrest for violations

---

[20] *Dempsey*, 834 F.3d at 467; *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (emphasizing the objective nature of the probable cause determination).

[21] *Dempsey*, 834 F.3d at 477.

9

occurring in their presence, and arrest warrants in summary cases may issue if a defendant ignores or will not obey a summons.[22]  Second, while we have suggested that state law is not irrelevant to a Fourth Amendment reasonableness inquiry,[23] its salience is circumscribed.[24]  If an arrest is "otherwise reasonable, the fact that it is not for an 'arrestable' offense [under state law] does not make it unconstitutional."[25]  Such is the case here.

Finally, on the facts alleged in the complaint, Noviho's false arrest and imprisonment claims appear to be infirm as a matter of law.[26]  The dividing line between false arrest/imprisonment claims and malicious prosecution claims is the initiation of

---

[22] *See* 75 Pa. Cons. Stat. § 6304 ("Authority to arrest without warrant"); Pa. R. Crim. P. 421, 430; *cf. Commonwealth v. Clark*, 735 A.2d 1248, 1251 (Pa. 1999) ("A warrant is also required to make an arrest for a misdemeanor, unless the misdemeanor is committed in the presence of the police officer.").

[23] *See United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007).

[24] *Cf. Virginia v. Moore*, 553 U.S. 164, 176 (2008) (holding that state restrictions on arrestability for "in presence" offenses do not "alter the Fourth Amendment's protections").

[25] *Thomas v. City of Peoria*, 580 F.3d 633, 637 (7th Cir. 2009) (Posner, J.); *see also Woods v. City of Chicago*, 234 F.3d 979, 995 (7th Cir. 2000) (collecting cases for the proposition that the Fourth Amendment does not incorporate an "in the presence" requirement for misdemeanor arrests).

[26] Although not raised below or on appeal by the defendants, this infirmity in the complaint is solely a matter of law and, given the unique posture of the case, would be an independent reason to affirm the judgment.  As a result, we exercise our discretion to reach it.  *See Ins. Fed. of Pa., Inc. v. Sup. Ct. of Pa.*, 669 F.2d 112, 114 (3d Cir. 1982) (per curiam) ("[W]e can affirm the dismissal on grounds other than those relied upon by the district court.").

legal process.[27]  Arrests made pursuant to a "validly issued—if not validly supported—arrest warrant" generally occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment.[28]  Here, Noviho was arrested pursuant to a warrant, and a Pennsylvania "court case" is initiated by "the filing of a complaint, *followed by* the issuance of a summons or arrest warrant."[29]  Because Noviho was detained pursuant to legal process, it is likely that his false arrest/imprisonment § 1983 claims all actually sound in malicious prosecution, and thus fail under the favorable termination test discussed above.[30]

c) Conspiracy/*Monell*

Noviho argues that his conspiracy and *Monell* claims should be reinstated. Because we agree with the District Court that these claims are dependent on the existence

_____

[27] *See Wallace v. Kato*, 549 U.S. 384, 389–90 (2007).

[28] *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013); *see also Smith v. Munday*, No. 15-1092, ___ F.3d ___, 2017 WL 465287, at *6 (4th Cir. Feb. 3, 2017) ("A claim for false arrest alleges that a warrantless arrest lacked probable cause; a claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause."); *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 4 (1st Cir. 1995).  We came to the same conclusion, albeit in the context of Delaware common law, in *Burt v. Ferrese*, 871 F.2d 14, 17 (3d Cir. 1989).

[29] Pa. R. Crim. P. 502 cmt (emphasis added).  We note that the Common Pleas docket in the appendix indicates that the complaint and arrest warrant were issued on the same day.

[30] *See Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000) ("If his claim is categorized as being like false arrest, then his claim fails because false arrest does not permit damages incurred after an indictment, excluding all the damages he seeks.  But if his claim is treated as resembling malicious prosecution, then he would face the problem that a plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution.").

11

of an underlying substantive constitutional violation—and, per the discussion above, finding no such claim to be well pleaded—we will not disturb the District Court's ruling.

## III.

Although we decide that Noviho's complaint fails to state a claim under our precedent, his allegations do not fail to give us pause. Nevertheless, for the reasons set forth above, we must affirm the order of the District Court.